## COLE v. MISSOURI, K. & O. R. Co.

No. 2023, Okla. T.   Opinion Filed Feb. 18, 1908.

(94 Pac. 540.)

1.   **WATERS AND WATER COURSES—Obstruction—Damages—
     Surface Water Distinguished.**   Where water flows from the lands
     drained by a water course into the water course, and the water
     course becomes obstructed by reason of a railway company con-
     structing its roadbed and changing the channel of the water
     course in such a way that at time of ordinary freshets, the water
     thus obstructed accumulates until it exceeds the banks of the
     water course, and spreads out over the lowlands adjacent to the
     water course, the water thus accumulated is not surface water.
     If the water thus obstructed and accumulated breaks the bounds
     that confine it, and flows on or across the lands of a lower
     riparian owner in greater volume, with more violence or by dif-
     ferent course or manner than it would if permitted to flow to
     him in its natural state, and he is thereby injured, the railway
     company is liable in damages for the detriment thus caused.

2.   **TRIAL—Evidence—Sufficiency—Demurrer.**   When there is any
     evidence introduced at the trial of a cause reasonably tending to
     establish the allegations of plaintiff's petition, it is error for the
     court to sustain a demurrer to such evidence and render judg-
     ment in favor of the defendant.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; before B. F. Bur-
well, Judge.*

Action by J. D. Cole against the Missouri, Kansas & Oklaho-
ma Railroad Company.   Judgment for defendant, and plaintiff
brings error.   Reversed and remanded.

*M. Fulton,* for plaintiff in error.

*Clifford L. Jackson, John E. DuMars, Samuel A. Calhoun,*
and *Horace Speed,* for defendant in error.

KANE, J.   This is an action for damages brought by the plain-
tiff in error, J. D. Cole, against the defendant in error, the Mis-

souri, Kansas & Oklahoma Railroad Company, for injury done to the growing wheat crop of plaintiff in error by the defendant in error constructing the roadbed of its railway near the town of Arcadia, in Oklahoma county, at the place where Coffee creek empties into Deep Fork creek, and changing the course of Coffee creek in such a way that the water thereof entered Deep Fork creek through an artificial channel constructed by the defendant in error, and by filling up the former bed of Coffee creek and the ground between Coffee creek and Deep Fork creek in such a way that all of the water of Coffee creek, instead of flowing in the course marked out by nature, as it had theretofore done, all of the water of said Coffee creek was turned into Deep Fork creek by way of this artificial channel, which was inadequate in times of ordinary freshets to carry off the water as it flowed into Coffee creek. The defendant in error also constructed its roadbed in the bottoms, close to the mouth of Coffee creek, and threw up a grade about four to six feet high, extending from Arcadia westward a distance of about half a mile, and this grade did not have culverts or openings sufficient to carry off the waters of Coffee creek in times of ordinary high waters. In May, 1903, heavy rains occurred in the valley of these creeks, and the waters of Coffee creek, being obstructed by the grade, became swollen beyond its banks, and continued to rise until it ran over the top of defendant in error's grade, and finally washed away the roadbed at the point where it formerly entered Deep Fork creek, and the waters thus freed, joining with the water of Deep Fork creek, made a breach in the south bank of Deep Fork creek, and flowed on down the valley over and across the plaintiff in error's growing crop. The wheat crop of plaintiff in error which he alleges he lost was growing on his farm 1½ miles in a northeasterly direction from Arcadia, Deep Fork creek flowing through the farm.

The contention of plaintiff in error is that defendant in error in constructing its roadbed, the artificial channel before mentioned, and filling up the former channel of Coffee creek failed to make

adequate provisions for carrying off the water of Coffee creek in times of ordinary floods, and that by holding the entire volume of water back until the railway embankment gave way, suddenly precipitating the entire flood with great violence into and across Deep Fork creek, and out the south bank thereof, and the flood thus relieved, joining the waters of Deep Fork creek, rushed down the valley in greater volume and velocity, and in a different way and course than it would if not interfered with, and thus running over the land of plaintiff in error washed out his wheat. There is evidence in the record tending to support this contention. We believe it is substantially predicated upon the pleadings.

The only question, then, for this court to decide is: Does this evidence reasonably tend to prove a cause of action in favor of plaintiff in error? The court below held that it did not, and sustained a demurrer to the evidence, discharged the jury, and rendered judgment in favor of defendant in error.

That Coffee creek is a water course is conceded by counsel for defendant in error in their brief. On page 7 thereof we find the following: "The natural outlet of Coffee creek is the channel of Deep Fork creek. Coffee creek is a small water course extending from a point several miles northwest of Arcadia in a southeasterly direction to its union with Deep Fork creek." Deep Fork creek is also a water course. It is a more considerable stream than Coffee creek, as it carried off, not only the water flowing into Coffee creek, but also the water flowing from its other tributaries, and from the uplands drained by it. The legal status of these streams being established as water course, it follows that the plaintiff in error was entitled to have the water flow to him in its natural state, not only in so far as it was a benefit to him, but he was also bound to submit to receive it so far·as it was a nuisance by its tendency to flood his lands. *Mason v. Shrewsbury Ry. Co.*, L. R. 6 Q. B. 578. The plaintiff in error and the railway company, being engaged in lawful enterprises, had equal rights in this valley; that is, they were entitled to the ordinary rights and liberties of

riparian owners on the banks of natural streams, and as such each must use own right as not to infringe upon the rights of the other.

"It has long been established that the ordinary course of water cannot lawfully be changed or obstructed for the benefit of one class of persons to the injury of another." *Rex v. Trafford,* 1 Barn. & Adol. 874.

Counsel for defendant in error argues that the new channel carries off as much water as the old channel of Coffee creek. This may be so; but it is settled law here as well as elsewhere—settled beyond serious debate—that a railroad company in bridging its streams must provide a waterway for the passage of the water which flows into and down the stream in times of ordinary floods. *C. V. & C. Ry. v. Brevoort* (C. C.) 62 Fed. 129, 25 L. R. A. 527.

"Every one is charged with notice of nature's operations, but who can tell when a man will build his bulwarks against the flood? There is no public policy to allow one landowner to improve his condition at the cost of his neighbor; but the improver must, at his peril, see to it that the benefit to himself is large enough to pay both him and his neighbor's damage, if any. The law does not look to the interest of one individual, but recognizes and enforces the duties implied in his relation to others." (*O'Connell v. East Tenn., Va. & Ga. Ry. Co.,* 87 Ga. 246, 13 S. E. 489 , 13 L. R. A. 394, 27 Am. St. Rep. 246.)

Counsel for the parties all contend for the application of the common-law rule to the facts in this case. As it is one arising under the laws of the territory of Oklahoma, where it is provided that "the common law, as modified by constitutional and statutory laws, judicial decisions and the conditions and wants of the people, shall remain in force in aid of the General Statutes of Oklahoma," we believe counsel are right in this contention. Both parties treat Coffee creek as a natural water course. The only difference between them is their respective legal rights under an undisputed state of facts. We find at page 11 of the brief of defendant in error the following:

"Plaintiff, at page 9 of his brief, outlines the theory on which

the demurrer was sustained in the following language: 'Overflow water from a natural water course, in times of high water, may be treated as surface water and as a common enemy.' This statement is approximately correct."

Plaintiff in error at page 9 of his brief states his view of the case thus:

"Overflow water from a natural water course in times of ordinary high water was not held to be nor treated as surface water under the common law of England."

It will be seen by the above quotation from the brief of defendant in error that their theory is that the water that was held back by the inadequacy of the channel leading from Coffee creek to Deep Fork creek and the elevation of the railway grade must be treated as surface water, against which it may protect itself with impunity even to the damage of other riparian owners. This contention is not sustained by the authorities, nor do the authorities cited by the defendant in error justify that conclusion. We believe the Supreme Court of Ohio in *Crawford v. Rambo*, 44 Ohio St. 279, 7 N. E. 429, states the rule correctly, as follows:

"It is difficult to see upon what principle the flood waters of a river can be likened to surface water. When it is said that a river is out of its banks, no more is implied than that its volume then exceeds what it ordinarily is. Whether high or low the entire volume at any one time constitutes the water of the river at such time; and the land over which its current flows must be regarded as its channel, so that, when swollen by rains and melting snows, it extends and flows over the bottom along its course; that is, its flood channel—as when by drouth it is reduced to its minimum it is then in its low-water channel."

Surface water is that which is diffused over the surface of the ground derived from falling rains and melting snows, and continues to be such until it reaches some well-defined channel in which it is accustomed to and does flow with other waters, whether derived from the surface or springs, and it then becomes the running water of a stream and ceases to be surface water."

It may justly be said of the water of Coffee creek that it may

at one time, as it fell upon lands drained by the stream, have all been surface water against which the defendant in error may have protected itself as a common enemy; but, when this water flowed naturally into Coffee creek and its natural outlet became obstructed by the grade of the railway in such a way that the volume of the stream became swollen beyond its limits and spread out over the adjacent bottoms, it can in no sense be termed surface water.

"Whether water is or is not surface water within the meaning of that term must be determined from the peculiar facts in the case in which the question is presented. But to say that the flood or overflow water of this Nemaha river, when out of its banks, and flowing from foothill to foothill, is not a part of the river itself, nor part of the natural water course, but mere surface water, is to contradict ordinary common sense. In one sense of the word all the water of this river was at one time, perhaps, surface water. When this water was falling upon the watershed of this stream, when it was millions of aqueous threads, flowing towards the stream covering the surface of the watershed, then it was surface water; but, when it reached the stream became a part thereof, whether the stream was then flowing between its ordinary banks and in its ordinary channel, or whether it had extended beyond its channel, and was flowing from one foothill to the other, then this water ceased to be surface water and became a constituent part of the natural stream." *C., B. & Q. R. R. Co. v. Emmert*, 53 Neb. 237, 73 N. W. 540, 68 Am. St. Rep. 602.

The above case bears a close resemblance to the one at bar. The railroad company contended that its embankment was properly constructed, that the overflow of the flood water was surface water, and that the surface water was the cause of the damage, just as the railroad company contends here that the water held back by the insufficiency of the channel and the erection of its grade along the Coffee creek bottom was surface water.

The case of *Walker v. N. Mex. & So. Pac. R. R. Co.*, 165 U. S. 593, 17 Sup. Ct. 421, 41 L. Ed. 837, the case the defendant in error relies on most to support its contention, does not seem to us to be in point in this case. In the *Walker Case, supra,* the

water was not obstructed in a water course, but as is said in the opinion:

"It was simply surface water. And the arroyos through which the water flowed after leaving the mountains were not running streams, natural water courses, but simply passage ways for the rain which fell."

And further on in the same opinion the court said:

"It is obvious, not only that it was mere surface water whose flow was obstructed, not only that no natural water courses were filled up, but also that the channels which were obstructed were not such ravines, gorges, and outlets as in a mountainous district must be open to prevent the forming of lakes and reservoirs therein, but simply the ordinary ditches and passageways which surface water will cut in a generally level district in its effort to reach some flowing stream."

This opinion is not authority to support the theory of defendant in error that "Overflow water from a natural water course in times of high water may be treated as surface water and a common enemy."

The Kansas case cited (*Singleton v. A., T. & S. F. Ry. Co.*, 67 Kan. 284, 72 N. E. 786), and the Missouri case (*Abbott v. Railroad Company*, 83 Mo. 272, 53 Am. Rep. 581), merely hold that "a channel or other depression in the ground forming the bank of a river through which water escapes and flows from the river only at times of high water does not constitute a natural water course, and obstructing the flow of water therein from the river, to the injury of another, is *damnum absque injuria*." Neither of these cases go so far as to hold that water accumulated by building embankments across a water course and by changing the natural channel thereof is surface water.

We are of the opinion that where water flows from the lands drained by a water course into the water course, and the water course becomes obstructed by reason of a railway company constructing its roadbed and changing the channel of the watercourse in such a way at times of ordinary freshets, the water

thus obstructed accumulates until it exceeds the banks of the water course, and spreads out over the lowlands adjacent to the water course, the water thus accumulated is not surface water. If this water thus obstructed and accumulated breaks the bounds that confine it, and flows on or across the lands of a lower riparian owner in greater volume, with more violence or by a different course or manner than it would if permitted to flow to him in its natural state, and he is thereby injured, the railway company is liable in damages for the detriment thus caused.

We do not agree with counsel for defendant in error "that the court cannot, under the issues, consider the question of damages as based upon the damming back of the overflow water by the railway embankment west of Arcadia." But, on the contrary, we hold that if there was evidence introduced at the trial reasonably tending to show that this water was diverted from its natural course and obstructed by the grade of the defendant in error in such a way that it flowed over and across the land of plaintiff in error in a greater volume, or in a different manner than it did before it was thus obstructed or diverted, and that it did by reason thereof wash out his wheat, to his injury, the case should have gone to the jury.

The evidence introduced was to the effect that the plaintiff in error had been raising wheat on the same land ever since the opening of Oklahoma to settlement in 1889, and that, while the water flowing in its natural state did occasionally overflow the banks of Deep Fork creek and run over portions of the land of plaintiff in error, it never washed out to exceed four to five acres of wheat until the channel of Coffee creek was changed, and the waters thereof were obstructed. The testimony further tends to clearly show that never before did the water break over the bank of Deep Fork creek on the south side opposite to the place Coffee creek enters. The following question and answer are from the examination of plaintiff in error:

"Q. I will ask if at any time since you have been living

in that country water has broke over the bank of Deep Ford creek on the south side? A. No, sir; never."

There is also evidence in the record to show that before the railroad was constructed through that country the water of Coffee creek flowed into Deep Fork creek through a channel cut by the water of the creek on its natural way to where it emptied into Deep Fork creek, and that the waters of Coffee creek and Deep Fork creek thus joined flowed down Deep Fork creek, and when the water was high, and went out of its banks, it flowed part on one side and part on the other of Deep Fork creek without material injury to the riparian owners. All of this evidence, together with the fact that the plaintiff in error had resided in the valley a good many years without injury from the water while it was taking its natural course along the route that nature intended it should go, might properly have been taken into consideration by the jury, and was sufficient thus standing alone and uncontradicted to support a verdict in favor of the plaintiff in error, if one had been returned by the jury. When there is any evidence introduced at the trial of a cause reasonably tending to establish the allegations of plaintiff's petition, it is error for the court to sustain a demurrer to such evidence and render judgment in favor of the defendant.

Entertaining these views in relation to the case at bar, it follows that the judgment of the court below must be reversed, and the cause remanded, with directions to grant a new trial.

All the Justices concur.