## Town of Jefferson *et al. v.* Hicks.

### No. 47, Okla. T. Opinion Filed May 12, 1909.

#### (102 Pac. 79.)

1. **WATERS AND WATER COURSES—Protecting Lands from Floods—Embankments.** The owner of lands situated upon a water course may construct an embankment thereon to protect his land from the superabundant water in times of flood; but, in doing so, he must so place the embankment that the natural and probable consequences of the embankment in times of ordinary floods will not be to cause the overflow to erode, destroy, or injure the lands of other proprietors upon the water course.

2. **SAME—"Ordinary Floods."** An "ordinary flood" is one which, by the exercise of ordinary care and diligence in investigating the character and habits of the water course, might have been anticipated.

3. **SAME—"Surface Waters."** Overflow waters that continue in a general course, although without defined banks, back into the water course from which they started, or into another water course, do not become "surface waters," but remain a part of the water course.

4. **SAME—Obstructing Flow—Injunction.** An injunction will lie in equity to restrain the land owners on one side of a stream from maintaining a levee upon the bank thereof whereby the flood waters of the stream are made to overflow unnaturally the land of others on the opposite side of the stream, without regard to the ability of the land owners who constructed the embankment to respond in damages, since a single action at law would not furnish an adequate remedy to the land owners whose lands are subject to recurring injuries from the recurring diversion of the overflow waters caused by the embankment.

(Syllabus by the Court.)

*Error from District Court, Grant County; M. C. Garber, Judge.*

Action by W. J. Hicks against the Town of Jefferson and others. Decree for plaintiff, and defendants bring error. Affirmed.

*Sam P. Ridings,* for plaintiff in error.—*Cass v. Dix* (Wash.) 44 Pac. 113; *Mo. Pac. R. Co. v. Keys* (Kan.) 40 Pac. 275; *Jones v. St. L. R. Co.,* 84 Mo. 151; *Munkres v. K. C. R. Co.,* 72 Mo. 514; *Gray v. McWilliams,* 98 Cal. 157; *McDaniels v. Cummings,* 83 Cal. 515; 30 A. & E. Enc. L. 324, and cases cited.

*F. G. Walling,* for defendant in error.—*Cole v. M., K. & T. Ry. Co.,* 20 Okla. 227; *Crawford v. Rambo,* 44 Ohio St. 279; *Byrne v. Minneapolis & St. Louis Ry. Co.,* 38 Minn. 212; *Burwell v. Hobson,* 12 Grat. (Va.) 322; *Barden v. City of Portage,* 79 Wis. 126; 13 A. & E. Enc. L. (2d Ed.) 686.

HAYES, J. The petition in this case is for an injunction, and was originally brought in the district court of Grant county, by defendant in error, hereafter designated as "plaintiff," against plaintiffs in error, hereafter designated as "defendants." The trial in the court below resulted in a decree in favor of plaintiff, awarding him an injunction. From this decree a proceeding in error was filed in the Supreme Court of the territory where it was pending upon the admission of the state, and under the provisions of the Enabling Act the same is before this court for determination.

The trial judge, upon the request of both parties, made findings of fact. All the questions raised by this appeal go to the application of the law made by the court to the facts found. We therefore deem it unnecessary to set out the contents of the pleadings, and shall state in abbreviated form, the facts as found by the trial court. The defendant town of Jefferson is a municipal corporation, and the other defendants are the officers of said town. Plaintiff is the owner of the northwest quarter of section 24, township 26 north, range 6 west, Indian Meridian, in Grant county, which tract of land adjoins the town site of Jefferson on the west. A stream known as "Pond Creek" meanders through the plaintiff's said tract of land and through a portion of the town site of Jefferson. The channel of this stream is near the boundary line be-

tween plaintiff's tract of land and the town site, and, in its general course, extends in the same direction. The town of Jefferson and its officers had, at various times prior to the beginning of the action, engaged in the construction and were, at the institution of this action, maintaining a levee or embankment on the east side of said stream, and have, from time to time, increased its height and width. The court found that the result of building and maintaining the embankment had been, and would continue to be, that it cast the superabundant waters of the stream during periods of high water and floods over and upon the premises of plaintiff, resulting in great injury to his lands, crops, and buildings'thereon. For a number of years, at frequent intervals, high water and floods have occurred in this stream, and the superabundant water passed out over its eastern bank and over a portion of the town site of Jefferson. Two of such floods occurred within 12 months last prior to the time the last work was done by defendants upon said embankment and within the year last prior to the trial of the case in the trial court. The court finds that these floods could have reasonably been anticipated by the persons constructing the embankment by the use of ordinary diligence in investigating the character of the stream.

It is conceded that Pond creek is a water course. The two principal contentions of defendants are: First, that the embankment has not the effect to check, impede, or change the course of the waters of said stream and throw the same over and upon the premises of plaintiff except in extraordinary floods or high water; second, that whatever damage is done to plaintiff's property results from the superabundance or overflow water from the stream, which is surface water, and that damage done by surface water is *damnum absque injuria.*

The first of these contentions is one of fact which the trial court has found against defendants, in that he finds that the result of the building of the embankment has been, and will be, to cast the superabundant waters of said stream during periods of high water and floods over and upon the premises of the plaintiff, and

that such floods and high water could have been reasonably anticipated by defendants when they constructed the embankment, if they had used ordinary diligence in investigating the character of the stream. This finding is reasonably supported by the evidence.

The distinction between "ordinary floods" and "extraordinary floods" is well defined in 13 Ency. of Law (2d Ed.) p. 686, as follows:

"An ordinary flood is one, the repetition of which, though at uncertain intervals, might, by the exercise of ordinary diligence in investigating the character and habits of the stream, have been anticipated. An extraordinary flood is one of those unexpected visitations whose coming is not foreseen by the usual course of nature, and whose magnitude and destructiveness could not have been anticipated and prevented by the exercise of ordinary foresight."

The finding of the trial judge as to the character of the floods and high water which had occurred before this action was brought, by which plaintiff's premises had been flooded and injured, brings them directly within the above definition of "ordinary floods." Whether the superabundant water from this water course is surface water or is a portion of the water course is a question upon which the decisions of the courts of the states are in some conflict. In those cases in which the same conclusion has been reached, it has not always resulted from similar reasoning or from the application of the same rules of law. Some courts have held that a proprietor who, by dykes and embankments, changes the course of overflow water and inflicts injury upon his neighbor's land, is liable therefor, and have reached such conclusion by application of the rules of the civil law; while others have reached the same conclusion by the application of the rules of the common law. This court has held, in several cases, that the rights of landowners as to water courses and as to surface water are determined in this jurisdiction by the rules of the common law. *C., R. I. & P. Ry. Co. v. Groves.* 20 Okla. 101,

93 Pac. 755; *Cole v. M., K. & O. R. Co.,* 20 Okla. 227, 94 Pac. 540, 15 L. R. A. (N. S.) 268.

At common law these exists no easement or servitude in the premises of the lower landowner in favor of the owner of the higher land as to surface water which falls or accumulates by rain or the melting of snow. The lower landowner may treat such water as a common enemy and drive it back from his premises by erecting embankments and otherwise preventing its flow thereon, and in preventing its flow onto his premises he may cast it back on the premises from whence it came, or upon the premises of others. Such water is subject entirely to his control to the extent that he may receive it or reject it all. *Walker v. New Mex. S. O. Ry. Co.,* 165 U. S. 593, 17 Sup. Ct. 421, 41 L. Ed. 837. But it is well settled that one proprietor cannot for his benefit change or obstruct the ordinary course of water in a water course or stream to the injury of other proprietors. *O'Connell v. East Tenn., etc., Ry. Co.,* 87 Ga. 246, 13 S. E. 489, 13 L. R. A. 394, 27 Am. St. Rep. 246; Gould on Waters, par. 218.

The east bank of Pond Creek, which lies next to the town of Jefferson where the dyke or embankment has been constructed, and is now being maintained by defendants, in its natural state was approximately from one foot to two feet lower than the west bank, which lies next to the land of plaintiff. As a result of this condition of the banks of the stream, when the high waters came and overflowed the channel, the overflow occurred over the east bank, and the superabundant waters passed down over the town site. Defendants have at different times, constructed on the eastern bank of this stream a levee about four feet in width and ranging from one to two feet in height, as a result of which, when floods now come, the water, when it reaches a height in the stream above the original banks, is diverted by the levee and turned out upon the premises of plaintiff, and, as the rainfall increases and the floods become greater and more destructive in extent, defendants have, from time to time, increased the width and heighth of this embankment, thereby increasing the injuries

the high waters of the stream inflict upon plaintiff's property. Without such embankment, these waters would follow the course provided by nature for them and would depart from their regular channel over the east bank of the stream and would follow the flood channel over the town site.

The owner of land upon a water course may construct an embankment thereon to protect his land from the superabundant water in times of flood, but, in doing so, he must so erect it that the natural and probable consequences of the embankment in times of ordinary floods will not be to cause the overflow water to erode or destroy the lands of other proprietors on the stream. *Crawford v. Rambo*, 44 Ohio St. 279, 7 N. E. 429, is a case in which the question under consideration was fully and thoroughly considered by the court, and it is a leading case upon this question. The facts in that case were very similar to the facts in the case at bar. The court therein said:

"The maxim, *'sic utera tuo ut alienum non laedas'* would seem to apply with peculiar propriety to a case like this. Each proprietor on a river has a right to the enjoyment of its waters as it flows by his premises, and the right, also, to modify and limit its current upon his own property as will best subserve his own convenience and notions of propriety, and he may therefore construct and maintain embankments thereon for the purpose of protecting any part of his lands from being injured by the overflow of the river in times of high water; but it is equally clear that this right to deal with the river and to control its current must be exercised with a just regard to the rights of others. He cannot, by the construction of embankments or otherwise, divert the waters of the river from his own lands and cause them to flow over and upon those of his neighbor to the substantial injury of the latter, however beneficial it may be to his own lands, without violating this elementary maxim of justice."

The same doctrine is stated by Mr. Angell, in his work on Water Courses, in the following language:

"A riparian proprietor may in fact, legally erect any work in order to prevent his land being overflowed by any change of the natural state of the river and to prevent the old course of the

river from being altered. But a riparian proprietor for his greater convenience and benefit has no right to build anything which, in time of ordinary flood, will throw the water on the grounds of another proprietor so as to overflow and injure them." (Sections 333 and 334.)

*Rex v. Trafford*, 20 Eng. C. L. R. 498, is a leading English case upon this subject. Lord Tenterden, C. J., who delivered the opinion of the court in that case, says:

"Now it has long been established that the ordinary course of water cannot be lawfully changed or obstructed for the benefit of one class of persons, to the injury of another. Unless therefor a sound distinction can be made between the ordinary course of water flowing in a bounded channel at all usual seasons, and the extraordinary course which its superabundant quality has been accustomed to take at particular seasons, the creation and continuance of these fenders cannot be justified. No case was cited, or has been found, that will support such distinction."

See, also, *Mensies v. Breadalbane*, 3 Bligh. (N. S.) 413.

*O'Connell v. East Tenn., etc. Ry. Co., supra,* was a case in which the railway company had erected an embankment for its track along the margin of its land and on the lower side of a river, thereby causing the accumulated waters of the river in times of flood to overflow the land of plaintiff on the opposite side of the river to a greater extent than it had done before the construction of the embankment. In holding that the railway company was liable for damages for such injury, and in discussing the character of such overflow, the court said:

"Thus it is material to consider whether the overflow as above stated is properly classed with surface water. This depends upon the configuration of the country and the relative position of the water after it has gone beyond the usual channel. If the flood water becomes severed from the main current, or leaves the stream never to return, and spreads out over the lower ground, it has become surface water; but if it forms a continuous body with the water flowing in the ordinary channel, or if it departs from such channel *animo revertendi,* presently to return, as by the recession of the waters, it is to be regarded as still a part of the river. The identity of the river does not depend upon the volume of water which may happen to flow down its course at any particular season."

In *Byrne v. Minneapolis & St. L. Ry. Co.*, 38 Minn. 212, 36 N. W. 339, 8 Am. St. Rep. 668, the court said:

"A 'water course,' in the legal sense of the term, does not necessarily consist merely of the stream as is flows within the banks which form the channel in ordinary states of water. When, in times of ordinary high water, the stream, extending beyond its banks, is accustomed to flow down over the adjacent lowlands in a broader but still definable stream, it has still the character of a water course, and the law relating to water courses is applicable, rather than that relating to mere surface water."

In *Burwell v. Hobson*, 12 Grat. (Va.) 322, 65 Am. Dec. 247, there was involved two tracts of land on the opposite sides of a creek. Both tracts had at one time belonged to the same person, who erected a dyke on the lower side of the creek to protect the lowlands on that side from overflow. Afterwards the tracts of land on opposite sides of the creek were owned by different persons. The court enjoined the proprietor of the tract on the higher side of the creek from erecting an embankment on his land next to the creek, the effect of which would be to destroy the embankment previously erected on the lower side.

In *Ohio & Miss. Ry. Co. v. Ramey*, 139 Ill. 9, 28 N. E. 1087, 32 Am. St. Rep. 176, it was held that the railroad company, in constructing and maintaining upon a water course an embankment, is bound to anticipate and provide, not only for the flow of ordinary raise and fall of water during the year, but also for the floods and freshets which occur at long periods and which, from having been generally known to occur, may be reasonably expected to occur again.

Other cases in point are: *West v. Taylor et al.*, 16 Or. 165, 13 Pac. 665; *Ill. Cent. Ry. Co. v. Bom* (Ky.) 76 S. W. 352; *Sullivan v. Dooley*, 31 Tex. Civ. App. 589, 73 S. W. 82; *Cairo, V. & C. Ry. Co. v. Brevoort* (C. C.) 62 Fed. 129, 25 L. R. A. 527.

In *Sullivan v. Dooley, supra,* a creek formed the boundary between two landowners. The land on both sides of the stream was subject to frequent overflow, but the land on one side of the stream was more subject to overflow than the land on the

other side. The court held that an injunction would lie to restrain the owner of the land which was more subject to overflow from constructing a levee thereon to turn back the flood waters when the effect of such levee would be to cause the stream to overflow unnaturally the land of the other owner.

In *Cairo, V. & C. Ry. Co. v. Brevoort, supra,* Baker, District Judge, used the following language:

"The waters cast into a stream by ordinary floods must have a channel in which they are accustomed to flow, and, if they have, that channel is a natural water course, which with no riparian proprietor can lawfully interfere to the injury of another. If there is a natural waterway, or course, and its existence is necessary to carry off the water cast into the stream, and if it is the flood channel of the stream, the water which flows there cannot be regarded as surface water. Surface water is that which is diffused over the ground from falling rains or melting snows, and continues to be such until it reaches some bed or channel in which water is accustomed to flow. Surface water ceases to be such when it enters a water course in which it is accustomed to flow, for, having entered the stream it becomes a part of it, and loses its original character."

The flood waters in the case at bar were accustomed, before the erection of the levee, to break out of the channel over the east bank of the stream at the place where the levee is being maintained and to flow down through the town site of Jefferson, and ultimately back into the main channel, or into another water course south of the levee. When the surface waters which fall upon the watershed of Pond creek ultimately gather and collect in the channel of that stream, they lose their character as surface water and become the waters of a water course, and when they overflow the bank opposite the town site and pursue a general course back into the same water course, or into another watercourse, although they do not follow a channel with well-defined banks, they continue flood waters of the water course and do not become surface water.

Mr. Gould, in paragraph 264 of his work on Waters, says:

"A stream does not cease to be a water course and become

mere surface water because at a certain point it spreads over a level meadow several rods in width, and flows for a distance without defined banks before flowing again in a definite channel."

*Spelman v. City of Portage*, 41 Wis. 144, and *Barden v. City of Portage*, 79 Wis. 126, 48 N. W. 210, are cases directly in point and support the doctrine we here follow. There is a well-defined line of decisions which hold that where flood water sets out over the lowlands and becomes lodged in pools, basins, or depressions in the lowlands and does not follow any course back into the original water course or other water courses, it becomes "surface water." The difference in the facts in the case at bar and the facts to which that rule has been applied in those cases render it unnecessary for us to review those cases; but able counsel for defendants in their brief have called our attention to cases which are in point and support a rule contrary to the one we here adopt. In such cases it is held that flood waters, although they return to the same water course, or flow into other water courses, become surface waters, and the owner of the lowlands may protect himself against them by dykes or embankments; but in our opinion these cases are against the weight of authority and are not supported by the better reasoning. *Sullivan v. Dooley*, and *Cairo, V. & C. Ry. Co. v. Brevoort, supra.*

Defendants contend that plaintiff is not entitled to relief in this action for the reason that he has violated those two maxims of equity which require that he who seeks equity must do equity, and that he who comes into a court of equity must come with clean hands. The wrongdoing with which they charge him is that he has constructed to the north of the levee constructed by defendants an embankment along the boundary line of his farm by which he throws extra water into Pond creek, thereby increasing its volume and rendering the town site more subject to overflow. As to this contention the court makes the following finding:

"The court finds that the plaintiff has constructed at the northwest corner of his premises a small embankment for the purpose of turning from his premises the surface water, which had been conveyed to and upon his premises by ditches, grades,

and drains, constructed on the public highway forming the western boundary of said premises; and that said embankment was so constructed by the plaintiff several years after the building or construction of the dyke or embankment on the eastern bank of the stream by the town of Jefferson."

Plaintiff, in protecting himself against the surface waters by building such embankment, exercised the right conferred upon him by common law, and the facts fail to show that he has violated any duty imposed upon him by law.

It is also contended that plaintiff has an adequate remedy at law, and that he has failed to allege or prove that defendants are insolvent and could not satisfy all claims for damages which he might sustain. This contention is without merit. The evidence in this case discloses that Pond creek overflows at frequent intervals, and an action for damages for the injury plaintiff has already suffered would not be adequate relief, in that after each recurring flood he would be required to bring another action to recover the damages sustained by him. To avoid this multiplicity of suits, equity will interpose and give him relief by injunction. *Sullivan v. Dooley, supra; Roberts v. Vest,* 126 Ala. 355, 28 South. 412; *Railway Co. v. Tait,* 63 Tex. 223; *Railway Co. v. Seymour,* 63 Tex. 347.

It it also urged that an injunction in this case is not the proper remedy, for the reason that the action of defendants of which the plaintiff complains are completed acts and are not grounds for a preventative or mandatory injunction. The general rule that a past or completed act is not a ground for injunction does not apply where it is sought to enjoin the maintaining of a levee or dyke which has been constructed and which causes an overflow of plaintiff's land. The object sought by the injunction is not only to prevent its construction, but also to prevent its continuance, and the court may enjoin such continuance as it has in this case. Spelling's Extraordinary Relief, par. 327.

The judgment of the lower court is affirmed.

All the Justices concur.