# CHICAGO, R. I. & P. RY. CO. v. MORTON.

No. 5840.   Opinion Filed May 16, 1916.

(157 Pac. 917.)

1. **TRIAL—Waters and Water Courses—Flowage—Actions for Injuries—Instructions.** Instructions examined, and held not to be in conflict, nor inconsistent. but free from error.

2. **WATERS AND WATER COURSES—Flowage—Liability for Injuries—Act of God.** An unprecedented rainfall and resulting flood, to excuse liability as an "act of God," must not only be the proximate cause of the injury, but it must be the sole cause. If the injury occasioned by an "act of God" would not have occurred except for the negligence of the defendant co-operating therewith as an efficient and contributing concurrent cause, the defendant will be liable.

3. **SAME—Liability for Injuries—Necessity for Notice.** Where a railroad company operates a railroad under a lease and prior to the execution of the lease there had been constructed upon the right of way a bridge and an embankment, which because of its being insufficient to carry off the waters of a water course, crossed by said railroad, in times of ordinary flood, obstructed such waters and caused them to overflow adjacent lands to their damage so as to constitute a nuisance, and said railroad company had knowledge of the insufficiency of such bridge and embankments, or should have known of such insufficiency from facts of which it had knowledge, no notice and request to abate the nuisance is required to make the railroad company liable for injuries occasioned thereby.

4. **APPEAL AND ERROR—Review—Estoppel to Allege Error.** Where counsel for plaintiff in error has invited the action of the court upon which he predicates error, he will not be heard to complain thereof.

(Syllabus by Rummons. C.)

*Error from District Court, Alfalfa County;*
*James W. Steen, Judge.*

Action by F. A. Morton against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. O. Blake, .R. J. Roberts, W. H. Moore, J. G. Gamble, K. W. Shartel,* and *Partridge & Wiles,* for plaintiff in error.

*Titus & Talbot* and *A. R. Carpenter,* for defendant in error.

Opinion by RUMMONS, C. This action was commenced in the district court of Alfalfa county on June 24, 1912, by the defendant in error against the plaintiff in error, hereinafter styled plaintiff and defendant, respectively, as in the trial court, to recover damages to his crops and fences, and for the washing away of soil by an overflow of Driftwood creek on August 5, 1911. The plaintiff alleged that his damage was occasioned because the waters of Driftwood creek were obstructed by reason of the maintenance by defendant of its railway track, embankments, and bridge so carelessly and negligently constructed and maintained as to not afford sufficient waterway to permit the escape of the waters of Driftwood creek in times of ordinary overflow, and that on the occasion complained of the overflow waters of said creek were dammed up and obstructed by the embankments and grades of defendant's line of railroad so as to cause them to spread out and overflow the premises of plaintiff to his damage. Plaint'ff further alleged these highwaters occurred nearly every year, and sometimes several times a year, and that the defendant had notice and knowledge of the condition of its bridge, embankment, grades,. and tracks, and had knowledge that such condition was liable to obstruct the natural flow of the waters of Driftwood creek so as to occasion the flooding of adjacent lands prior to the occasion complained of, but that it negligently and carelessly permitted such bridge, embankment, grades,

and track to continue and remain in the same condition. The defendant answered the petition of plaintiff, denying generally the allegations therein not admitted, and alleged that the railroad in question was built by the Choctaw Northern Railway Company, and thereafter sold to the Choctaw, Oklahoma & Gulf Railroad Company, from whom on the 24th day of March, 1904, the defendant leased said line of railroad; that said embankment upon said line of railroad is now substantially in the same condition that it was at the time of its erection by the Choctaw Northern Railway Company; that the defendant has not, at any time, had notice from the plaintiff or any person that said embankment was improperly constructed or had caused, or was liable to cause, damage to the plaintiff's land or property. Defendant further alleged that the flood on the plaintiff's land, on the 5th day of August, 1911, was caused by an unprecedented rain which human foresight was unable to guard against, and was an "act of God," for which the defendant was not responsible. The cause was tried to a jury, resulting in a verdict for plaintiff in the sum of $675, and defendant, feeling aggrieved thereat, prosecutes this proceeding in error.

Defendant assigns five specifications of error as grounds for a reversal of the judgment of the court below. It first complains that the court erred in giving instruction No. 4, defining water courses, which instruction is as follows:

"You are instructed: A 'water course,' in the legal sense of the term, does not necessarily consist merely of the stream as it flows within the banks which form the channel in ordinary states of water; but it includes the overflow waters of such stream which extend beyond its banks in times of ordinary floods, and which, at such

times, are accustomed to flow down over the adjacent low lands in a broader, but still definable, stream, or to flow in natural depressions, continuing, in a general course, though without definable banks, back into the stream from whence they started, or into another water course."

In the same connection it complains of the refusal of its requested instruction No. 5, which is as follows:

"You are instructed that a water course is a stream naturally flowing in a certain direction, having a bed and bank and flowing in some definite stream or body. Ravines, draws, and low places which gather and hold water, or through which surplus water and overflow waters occasionally flow, are not considered as natural water courses or streams."

We cannot agree with the contention of defendant that the court committed error in giving the instruction complained of, or in refusing the requested instruction. The instruction given is in harmony with the decisions of this court. Cole v. M., K. & O. Ry. Co., 20 Okla. 227, 94 Pac. 540, 15 L. R. A. (N. S.) 268; Town of Jefferson v. Hicks, 23 Okla. 684, 102 Pac. 79, 24 L. R. A. (N. S.) 214; Miller v. Marriott, 48 Okla. 179, 149 Pac. 1164. In Town of Jefferson v. Hicks, supra, Mr. Justice Hayes, who delivered the opinion of the court, in the third paragraph of the syllabus, says:

"Overflow waters that continue in a general course, although without defined banks, back into the water course from which they started, or into another water course, do not become 'surface waters,' but remain a part of the water course."

It is contended by defendant that the instruction given is erroneous, because inapplicable to the evidence in the case. We think counsel for defendant are wrong

in this contention, and that the instruction requested by defendant is open to the charge of being inapplicable to the facts, rather than that given by the court. The evidence discloses that the line of railroad operated by defendant crosses Driftwood creek just south of the township line between townships 27 and 28, range 11, W. I. M., and a short distance east of the line between sections 3 and 4 in township 27. The stream meanders in a southeasterly direction, and at the time of the flood, out of which this controversy arises, the stream overflowed its banks, both to the north and to the south, and the flood waters, of which plaintiff complains, overflowed the banks of the stream in sections 32 and 33, township 28, and flowed in an easterly direction along the south line of plaintiff's farm, which is the N. W. 1/4 of section 34, until they reached the embankment of the railroad operated by defendant, where joining with other flood waters from Driftwood creek they flowed north across the farm of plaintiff, doing the injury complained of, and eventually overflowed the tracks of defendant, and, according to the evidence of several witnesses, eventually returned either into Driftwood creek or Medicine river. On this state of the record, the instruction complained of was clearly applicable, while the requested instruction of defendant had no application.

Defendant next complains of instruction No. 10 given by the court, which is as follows:

"There has been evidence introduced in this action for the purpose of showing that another railroad company besides the defendant caused the injury complained of by plaintiff; and in this connection you are instructed that, even if another company did contribute to such injury, such concurrent action will not, in any way, relieve the

defendant company of its liability if the defendant contributed to the injury complained of. Where two or more parties by their concurrent wrongdoing cause injury to a third party, they are jointly and severally liable and the injured party may, at his option, institute an action and recover damages against one or all of those contributing to the injury."

Defendant urges that this instruction is erroneous, not because the statement of the law therein contained is incorrect, but because it does not require the jury to find whether the negligence of the Santa Fe Railroad Company or the Chicago, Rock Island & Pacific Railway Company was the proximate cause of the injury. The evidence discloses that the Santa Fe Railway Company maintained a line of railroad crossing Driftwood creek about a mile and half from the Chicago, Rock Island & Pacific bridge over the said stream, and that on the occasion of this flood the Santa Fe embankment was washed out by the overflow of Driftwood creek. We think the court committed no error in giving this instruction. It is not questioned that it correctly states the law applicable to torts committed by several tort-feasors, and, taken in connection with instructions Nos. 2 and 11, given by the court, the defendant cannot complain that the jury were not required to find, before permitting plaintiff to recover, that defendant's negligence was the proximate cause of his injury, and that the negligence of the Santa Fe Railway Company was not the proximate cause thereof. Instructions Nos. 2 and 11 are as follows:

"No. 2. You are instructed that the burden of proof is upon the plaintiff to prove, by a preponderance of the evidence, that his crops were overflowed and destroyed, and that their destruction was caused by the negligence, as alleged in plaintiff's petition, and that such negligence

was the direct or proximate cause of the injury complained of."

"No. 11. You are instructed that if you find from the evidence that the water which plaintiff complains of in his petition came from the west of his land over the land owned or occupied by Messrs. Williams, Forney, and Morgan in the N. E. ¼ of section 32 and the N. ½ of section 33, and flowed over and upon the land of the plaintiff in the N. W. ¼ of section 34, and that said water was released by the washing out of the embankment or dam of the Santa Fe Railway Company, and not by the backing up of the water in Driftwood creek, you will find the defendant should not be held responsible for the same, and that it should not be liable in damages for any injuries sustained by plaintiff."

Taking the instructions as a whole, we find no merit in the second specification of error urged by defendant.

Defendant also complains of instruction No. 7, which is as follows:

"You are further instructed that an 'act of God,' such as an unprecedented rainfall and resulting flood, which will excuse from liability, must not only be the proximate cause of the loss, but it must be the sole cause. If, however, the injury is caused by an act of God, commingled with the negligence of the defendant as an efficient and contributing cause, and the injury would not have occurred except for such negligence, the defendant would be liable.

"And you are further instructed that whether the flood of August 5, 1911, which plaintiff claims damaged his property, was an ordinary flood or an extraordinary flood, so unusual and unprecedented in its nature as to amount in law to an act of God, thus relieving the defendant of all liability, are questions for the jury to decide; and, if you find from the evidence that the flood in question was so unusual and unprecedented that its extent and

resulting effects could not have been reasonably anticipated and provided against by an ordinarily careful person in defendant's situation, then the defendant is not liable in damages caused thereby, unless you further find from the evidence that, even though such flood was in law an act of God, such injury would not have occurred except for the negligence of the defendant in maintaining the bridges across Driftwood creek, and the roadbed adjacent thereto, in such a condition as to obstruct the natural flow of the water in time of ordinary floods, and that such negligence was an efficient and contributing concurrent cause of the injury, then and in that event the defendant is liable for such injuries as may have been proven in the case."

It is urged that this instruction is unsupported by any evidence as to the insufficiency of the railroad bridge across Driftwood creek, and that the only evidence of negligence on the part of defendant was that a 24-inch tile in the embankment near the south line of plaintiff's land was insufficient, and was the proximate cause of the injury. Defendant, therefore, contends that the reference in the instruction to the negligence of the defendant in maintaining the bridge across Driftwood creek makes this instruction vicious. To properly consider this specification of error, we must make further reference to the evidence in this case. The line of railroad of defendant entered upon the land of plaintiff about a half mile north of its bridge across Driftwood creek. Just south of plaintiff's line, there was a 24-inch tile let into the embankment of defendant's line of railway for the drainage of a depression or draw in that vicinity; and it is urged that the damage occasioned to plaintiff resulted from the fact that this tile was not of sufficient capacity to carry off the waters coming down this draw, and that such waters

thereupon spread out over the land of plaintiff, occasioning the injury. It is true the evidence shows that this tile was of insufficient capacity to carry off the waters attempting to pass through it on this occasion; but defendant overlooks the fact that the waters flowing along the line of its grade were overflow waters from Driftwood creek occasioned by the backing up of the waters of that stream, which were attempting to pass beneath the bridge maintained by defendant. By reason of the fact that the waters could not readily pass this bridge, the stream was dammed up and the waters backed up for some considerable distance to the northwest, occasioning an overflow of the banks of the stream at several places, both to the north and the south, and the waters overflowing to the north from Driftwood creek eventually found their way to plaintiff's land. At least there was sufficient evidence to warrant the jury in finding that, had there been no obstruction to the flow of Driftwood creek by defendant's embankment and bridge, the waters thereof would never have overflowed the land of plaintiff so as to occasion damage. The evidence seems to us to be sufficient to authorize the court to submit to the jury the question as to whether or not the damage to plaintiff was occasioned by the negligent construction of the bridge of defendant.

It is further urged against this instruction that it indicates to the jury the attitude of the court, and invades the province of the jury, by practically instructing them that the defendant was negligent in maintaining the bridge across Driftwood creek. We do not believe that any such construction can be placed upon this instruction when considered together with the whole charge. The jury are not instructed that the maintenance of the bridge constituted negligence, but are instructed that if they find that the

flood doing the injury amounted to an "act of God," they must find for the defendant, unless they find from the evidence that the injury would not have occurred except for the negligence of the defendant in maintaining the bridge in such a condition as to obstruct the natural flow of the water in times of ordinary flood. This merely states to the jury what facts it was necessary to find before they could say that the injury was occasioned by the negligence of defendant. *Cole v. M. K. & O. Ry. Co.,* *supra; Town of Jefferson v. Hicks, supra; Missouri, K. & T. Ry. Co. v. Johnson,* 34 Okla. 582, 126 Pac. 567; *Chicago, R. I. & P. Ry. Co. v. McKone,* 36 Okla. 41, 127 Pac. 488, 42 L. R. A. (N. S.) 709; *Atchison, T. & S. F. Ry. Co. v. Eldridge,* 41 Okla. 463, 139 Pac. 254. We, therefore, hold that the trial court committed no error in giving the instruction complained of.

It is next contended by defendant that instructions 11, 12, and 13, given by the court, are inconsistent with instructions 3, 7, 8, 9, and 10, in that the jury were misled and confused thereby to the prejudice of defendant. We are unable to find wherein this inconsistency lies. The court, in instructions 11, 12, and 13 presented to the jury, together with the whole charge, the defenses interposed by the defendant, that the injury complained of was occasioned by an "act of God" for which the defendant was not responsible. In instructions 3, 7, 8, 9, and 10 the court submitted to the jury the contention of plaintiff that the negligence of defendant was the proximate cause of his injury. The instructions complained of in this specification of error do not contradict one another, and are not inconsistent with one another, but harmoniously present to the jury the law which is applicable to the facts of

the case as contended for by plaintiff and as contended for by defendant.

The fifth and last specification of error complains of instructions 8 and 9. It is urged by defendant that these instructions are erroneous and inapplicable because of the fact that defendant did not construct this line of railroad when it was originally built, but it was only the lessee thereof, and that it cannot be charged with damages resulting from any negligence in the construction thereof until it has notice of such defective construction, with a request to correct it. Counsel for defendant argue that if any damage was occasioned plaintiff because of the negligent construction of its embankment and bridge, the same is the result of a maintenance of a nuisance, and that defendant never constructed the nuisance, but, as the lessee, being only chargeable with maintaining it, it cannot be charged with the damages occasioned by such maintenance until it has been notified that such nuisance is likely to result in damage, and has been requested to remove it. Since *Pennruddock's Case,* 5 Coke, 101A, the rule contended for by defendant has been followed in England and in a great many jurisdictions of the United States to the full extent for which defendant contends; but we think the better authority has now modified the rule, so that a defendant who maintains a nuisance, created by his grantor or lessor, is chargeable with damages occasioned thereby, if he have knowledge of the existence of the nuisance and its liability to cause injury. *Martin v. C., R. I. & P. Ry. Co.,* 81 Kan. 344, 105 Pac. 451, 27 L. R. A. (N. S.) 164, note. Section 5254, Rev. Laws 1910, provides:

"Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of,

such property, created by a former owner, is liable therefor in the same manner as the one who first created it."

In *Castle v. Smith*, 4 Cal. Unrep. Cas. 561, 36 Pac. 859, the Supreme Court of California, construing a statute identical with the one above quoted, held that such statute would not dispense with notice to the successive owner of the existence and hurtful character of the nuisance. But the cases quoted by the court in that opinion sustain the proposition that knowledge of the existence of the nuisance and its hurtful character is sufficient to charge such successive owner. *Grigsby v. Water Co.*, 40 Cal. 396; *Pierce v. Society*, 72 Cal. 180, 13 Pac. 478, 1 Am. St. Rep. 45. The court in *Castle v. Smith, supra*, says, referring to the statute above quoted:

"It is claimed that this section dispenses with notice of the nuisance to the successive owner. But it is to be observed that the owner who creates the nuisance is presumed to have notice that it is a nuisance, therefore is held liable without notice; whereas, no such presumption is indulged against his successor. Consequently, notice to the successor must be proved, else he would be held liable in a different manner from the owner who created the nuisance, as well as for a different cause."

However, if the grantee or lessee have knowledge of the existence of the nuisance and of its liability to cause injury, he would stand in the same position as the one who created it, and would therefore be held liable in the same manner. We, therefore, conclude that the better authority is that knowledge of the existence and hurtful character of the nuisance, or knowledge of facts from which by the exercise of reasonable care and foresight such knowledge would have been acquired, renders a successive owner or lessee liable for the damages occasioned

by such nuisance, and that no request by the party injured for an abatement of the nuisance is necessary in order to give rise to a cause of action. This is in harmony with the view expressed by this court in the case of *Daniels v. St. Louis & S. F. R. Co.*, 36 Okla. 421, 128 Pac. 1089, 50 L. R. A. (N. S.) 929, where it was said:

"The law is that where real estate is bought after a nuisance, such as the borrow pit is claimed to have been, is created, the purchaser cannot be held liable for damages occasioned by the nuisance until his attention has been called to it and he has been asked to abate it. The rule is different where the purchaser uses or repairs the nuisance."

The court in that case further said:

"In this case the defendant company had not used the borrow pit, and, so far as the proof shows, had no notice of its dangerous character, or that it constituted a nuisance."

We think there was sufficient evidence to authorize the court to give instructions 8 and 9 complained of. It appears that in June, 1908, several property owners served a written notice upon the agent of the defendant that the bridge over Driftwood creek was insufficient to carry off the storm water coming down that stream, and that the defendant acknowledged receipt of this notice, and promised to take care of the matter. This notice particularly challenged the attention of the defendant to the insufficiency of its outlet for the storm water of Driftwood creek, calling attention to the fact that such waters were held back, flooding and destroying crops upon the adjacent lands. The notice further shows that two years before the giving of this notice the company had been notified of the condition of this bridge. We think on this state of

facts the defendant was chargeable with knowledge of the insufficient character of the outlet for the water of Driftwood creek, and that it thereby became responsible in damages to any one who might be injured by reason of its failure to correct such defective bridge. *Missouri, K. & T. Ry. Co. v. Johnson, supra.*

But even should we admit that the court erred upon the question of requiring notice to be given by the plaintiff, with a demand for an abatement of the nuisance, the defendant is not in position to complain of such error. The record shows that at the trial the following colloquy took place between the court and Mr. Titus, of counsel for plaintiff, and Mr. Roberts, of counsel for defendant:

"By the Court: Gentlemen of the jury, all the testimony regarding a verbal notice will be withdrawn from your consideration, and you will not give it any weight. To this ruling the plaintiff is given an exception.

"By Mr. Titus: The plaintiff at this time offers to prove—

"By the Court: His testimony is all in. I let it in the record and withdrew it. That is withdrawn, gentlemen of the jury; and you are instructed not to give it any consideration or weight in the case.

"By Mr. Titus: Later on I would like to present this authority to the court.

"By the Court: Bring your authorities in after dinner. If you can show me any law that is good, I will not hesitate to reverse myself, but up to the present time the decision on that point is against you."

(The court then took its noon recess.)

"By Mr. Roberts: When we adjourned, the question was raised with reference to the authorities on this propo-

sition of notice, does the court expect to take that up at this time or later?

"By the Court: I am ready to rule on it now. As I understand it, that don't affect the cause of action you have except as to the injury to the land.

"By Mr. Titus: If the court please, at this time we will announce that the cause of action, asking for permanent injuries, will be dismissed, and that. it is now for the crops destroyed and the soil washed off.

"By the Court: On application, the plaintiff is allowed to withdraw from this case, without prejudice to a new suit, the item of $850 for permanent injury to the land.

"By Mr. Roberts: The plaintiff having dismissed as to permanent damages, I think the question of notice is out of the case.

"By the Court: I think so. I don't think any notice is necessary now."

It thus appears that counsel for defendant advised the court that it no longer considered the question of notice as material to the case, and, having led the court into error, if it committed error, which we do not hold, it cannot now be heard to complain. *Wallace v. Duke,* 44 Okla. 124, 142 Pac. 308.

We think this cause was fairly tried by the court below, and that the trial court committed no error in the instructions complained of by the defendant, but that such instructions correctly state the law as to the issues involved in this case, and that the instructions complained of are in harmony with repeated decisions of this court above cited. Finding no error in the record, this cause should be affirmed.

By the Court: It is so ordered.