## J. A. SULLIVAN v. M. C. DOOLEY.

Decided March 11, 1903.

**1.—Water Courses—Obstructing—Riparian Owners—Injunction.**

Where a creek forming the boundary between two landowners frequently overflows, inundating portions of the land on both sides, the land of one of such owners being more subject to overflow, an injunction will lie in equity to restrain the latter from filling in the low places along the creek bank on his side and constructing a levee there such as will cause the stream to unnaturally overflow the land of the other owner.

**2.—Same—Injunction—Insolvency of Defendant.**

In an action to restrain such ower by injunction it is not necessary for plaintiff to allege that the defendant is insolvent, since our statute in relation to injunctions is construed as authorizing the grant of the writ where it appears that the party applying therefor is entitled to the relief demanded, and such relief, or any part thereof, requires the restraint of some act prejudicial to the applicant, and this although there may be an adequate remedy at law.

Appeal from the District Court of Dallas. Tried below before Hon. Richard Morgan.

*Ford & Crawford,* for appellant.

*M. L. Dye,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellant applied for an injunction to restrain appellee from erecting a levee along the banks of a creek which formed the boundary line between the land of appellant and appellee. A general demurrer to the petition was sustained.

It was alleged in the petition that the parties owned lands adjoining each other, the creek forming the boundary line between them; that the creek was ten miles long, and flowed into the Trinity River two miles below the land of the parties. That the creek frequently overflows its banks, and inundates portions of the land on both sides of it, that of appellee being easier overflowed than that of appellant. "That the defendant, in violation of plaintiff's right to have the water of said stream pursue its natural course, began the construction of a levee on the north bank of said stream and continues to build the same. That the defendant has filled in the natural low places of the said stream and is about to construct a levee on the north bank of said stream along the entire length of the boundary line between plaintiff and defendant. Plaintiff shows to the court that he is cultivating and using his land on the south bank of said stream up to the bank, and that the erection of said dykes on defendant's side of said stream, and the filling in of the low places, drains and draws in said bank, will cause the stream to unnaturally overflow the lands of plaintiff, to his great damage. That on the —— day of ——, 1902, defendant began such work, and threatens to continue the same, to plaintiff's great damage. That said injury is irreparable and can not be compensated in damages; and that the de-

fendant is not now, and would not be, in the opinion of the plaintiff, at the termination of this suit, the owner of property, real or personal, sufficient to satisfy this plaintiff for the damages he would ultimately sustain from the diversion of the said stream of water from its natural channel aforesaid, and the flooding of his lands, as the defendant is now doing and is about to do."

Under the civil law it appears that all waters, whether surface water or that flowing in water courses, is regulated by the same rule, which is, that if they have their course regulated by the contour of the land, by regulation or by title or ancient possession, no change can be made in the course of the water, to the detriment of anyone else. The common law rule on that subject is uncertain, but it has been declared to be the rule of the common law that a person may act as he pleases to get rid of the surface water, and that neither its detention, diversion nor repulsion is an actionable injury, even though damages may ensue. Jones v. Hannovan, 55 Mo., 462; Bowlsby v. Speer, 31 N. J. L., 351.

There has been a great diversity of opinion as to the rights and liabilities of parties diverting surface water from their land, but not more so than on the question as to what constitutes surface water. Some courts hold that flood water from a stream is surface water, but the larger number class such water as a part of the stream, and hold that it is not surface water.

In the case of O'Connell v. Railway, 13 Law. Rep. Ann., 394, the authorities on the question as to what constitutes surface water and as to the rights of parties to divert waters, whether surface or otherwise, are fully reviewed by the Supreme Court of Georgia. The court said: "If the flood water becomes severed from the main current or leaves the stream, never to return, and spreads out over the lower ground, it has become surface; but if it forms a continuous body with the water flowing in the ordinary channel, or if it departs from such channel animo revertendi, presently to return, as by the recession of the waters, it is to be regarded as still a part of the river. The identity of a river does not depend upon the volume of water which may happen to flow down its course at any particular season. The authorities hold that a stream may be wholly dry at times without losing the character of a water course. So, on the other hand, it may have a flood channel to retain the surplus waters, until they can be discharged by the natural flow." We think the language quoted is supported by common sense and experience as well as the weight of authority.

The question presented in the Georgia case is the same one presented by the record in this case, and that is, whether the owner of land on the bank of a stream can, without liability, erect on his own land an embankment which increases the overflow in times of flood upon the land of the opposite proprietor, to the injury thereof. The court held: "There is no public policy to allow one land owner to improve his condition at the cost of his neighbor; but the improver must, at his peril, see to it that the benefit to himself is large enough to pay both him and

his neighbor's damage, if any. The law does not look to the interest of one individual, but recognizes and enforces the duties implied in his relation to others."

In the case of Railway v. Brevoort, 25 Law. Rep. Ann., 527, the subject of riparian rights is well discussed. It was said: "The waters cast into a stream by ordinary floods must have a channel in which they are accustomed to flow, and, if they have, that channel is a natural watercourse, with which no riparian proprietor can lawfully interfere to the injury of another. If there is a natural waterway or course, and its existence is necessary to carry off the water cast into the stream by ordinary floods, that way is the flood channel of the stream; and, if it is the flood channel of the stream, the water which flows there can not be regarded as surface water. Surface water is that which is diffused over the ground from falling rains or melting snows, and continues to be such until it reaches some bed or channel in which water is accustomed to flow. Surface water ceases to be such when it enters a watercourse in which it is accustomed to flow; for having entered the stream, it becomes a part of it, and loses its original character. * * * It must necessarily follow from this general principle that where water naturally flows, though the volume may change with the varying seasons, there is a natural watercourse, even though at times the place where the water flows in ordinary floods may become entirely dry." It was held by the court that the construction of a levee along the banks of the stream whereby the flood waters were carried on the land of an adjoining proprietor was a plain invasion of his rights, and that an injunction should be granted.

In the case of Burwell v. Hobson, 12 Grattan, 322, 65 Am. Dec., 247, it was contended that a riparian proprietor might lawfully protect his property from floods by erecting obstructions, though the necessary effect was to turn the water on the land of the adjacent landowner. It was held, "he has no right to build anything which, in times of ordinary flood, will throw the waters on the grounds of another proprietor, so as to overflow and injure them."

In the case of Webster v. Harris, 69 S. W. Rep., 782, an injunction was sought to restrain the defendants from interference with riparian rights, and it was held that the rights of riparian proprietors are correlative, and such rights may be protected by injunction.

We conclude that the allegations in the petition to the effect that appellee has filled in the low places in the stream, and is about to construct a levee which will cause the stream to unnaturally overflow the lands of appellant, showed a contemplated invasion of the rights of appellant, and that the petition was good as against a general demurrer.

It was not necessary to allege that the wrongdoer was insolvent, or unable to respond in damages. "To protect against constant or frequently recurring injuries from the wrongful diversion of water, equity has jurisdiction concurrent with courts of law, and will enjoin the wrongdoer, without regard to his ability to respond in damages, since a

single action at law would not furnish an adequate remedy, and a multiplicity of suits can be avoided by proceeding in equity." Roberts v. Vest (Ala.), 28 So. Rep., 412; Railway v. Tait, 63 Texas, 223; Railway v. Seymour, 63 Texas, 347.

It is held in the case of Sumner v. Crawford, 91 Texas, 129, that by virtue of the provisions of article 2989, Revised Statutes, an action for injunction may be maintained in cases "where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief, or any part thereof, requires the restraint of some act prejudicial to the applicant," although there may be an adequate remedy at law.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*