CITY OF BROWNWOOD et al. v. BROWN TELEGRAPH & TELEPHONE CO.

(Court of Civil Appeals of Texas. Austin. Dec. 11, 1912. Rehearing Denied Jan. 15, 1913.)

1. TELEGRAPHS AND TELEPHONES (§ 10*)— RIGHTS TO ROADS AND STREETS—STATUTES.
    Rev. Civ. St. 1911, art. 1231, authorizing corporations created for constructing and maintaining magnetic telegraph lines to set their poles and wires along roads and streets, applies to telephone as well as telegraph lines.
    [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

2. TELEGRAPHS AND TELEPHONES (§ 10*)— CONTROL OF STREETS—STATUTES.
    The power of control of its streets, with right to abate any encroachments thereon, given a city by Rev. Civ. St. 1911, art. 854, is subor-

dinate to the power given telegraph and telephone companies by article 1231 to set their poles along streets, subject only to the right given the city by article 1235 to specify location and kind of poles, so that injunction against interference by the city with erection of telephone poles in streets does not divest the city of its right of possession of the street; such right having been granted the company by the state.
    [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

3. TELEGRAPHS AND TELEPHONES (§ 10*)— RIGHTS TO STREETS—REGULATION BY CITY COUNCIL—WAIVER OF RIGHT.
    A city being without right to exclude a telephone company from occupancy of its street, but having merely right to direct where the poles should be located, which it had, by ordinance, undertaken to do, and the company having agreed to comply with the ordinance, and in addition offered to conform to any suggestions of the council, the council, by merely refusing to act, waived its privilege in this respect, giving the company the right to proceed with the work according to the ordinance, so that injunction against the city and its officers interfering with the work was proper, and not an exercise of the city's right of designating location of the poles.
    [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

4. INJUNCTION (§ 14*)—ADEQUATE REMEDY AT LAW.
    By provision of Rev. Civ. St. 1911, art. 4643, one showing itself entitled to injunction under the principles of equity is entitled to the writ, where it is threatened with irreparable injury to its property rights, independent of whether it has an adequate legal remedy.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 14; Dec. Dig. § 14.*]

5. INJUNCTION (§ 16*)—ADEQUATE REMEDY AT LAW.
    Even if right of a telephone company to injunction against interference with its right to erect poles in a street is dependent on its not having complete and adequate remedy at law, such remedy is wanting; its line being completed to the city, and it being threatened with arrest and prosecution of its employés if they proceed with the work.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 15; Dec. Dig. § 16.*]

6. MANDAMUS (§ 3*) — OTHER REMEDY — INJUNCTION.
    The city council having acted on and refused a telephone company's application to erect poles in the streets, it cannot be said resort should be to mandamus rather than injunction against the city's interference with such erection.
    [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 8, 10–34; Dec. Dig. § 3.*]

7. TELEGRAPHS AND TELEPHONES (§ 10*)—USE OF STREET—APPLICATION FOR PERMIT—DEPOSIT—CERTIFIED CHECK.
    It is no ground, for a city refusing permit to a telephone company to erect poles in streets, that it deposited, instead of money, a certified check to cover any damages; that being equivalent to a deposit of money.
    [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

8. CORPORATIONS (§ 513*)—AUTHORITY OF OFFICERS—PLEADING.
    The petition of a telephone company to enjoin interference by a city with erection in its

streets of poles of the company, the city council having denied its application for a permit, need not allege that authority of its president and manager, who presented its application to act in its behalf therein, was shown to the council, or possessed by him; such authority being presumed, in the absence of plea raising the issue.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2017–2027, 2031–2034, 2036–2045; Dec. Dig. § 513.*]

9. TELEGRAPHS AND TELEPHONES (§ 10*)—USE OF STREET—PETITION FOR PERMIT—REFERENCE TO ORDINANCE.

That the application of a telephone company to a city council for permit to erect poles in the street, referring to and offering to comply with all the ordinances on the subject, erroneously designated them as civil, instead of criminal, is immaterial.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

Appeal from District Court, Brown County; John W. Goodwin, Judge.

Suit by the Brown Telegraph & Telephone Company against the City of Brownwood and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Paul Harrell and Harrison & Wayman, all of Brownwood, for appellants. E. B. Anderson and I. J. Rice, both of Brownwood, for appellee.

RICE, J. This suit was brought by appellee to restrain by injunction the officers and agents of appellant from prosecuting, arresting, or in any manner interfering with appellee or its servants in the erection and construction of a telephone line in and upon certain streets of the city of Brownwood, wherein a temporary restraining order was issued as prayed for. Prior to the institution of this suit, appellee, who is duly incorporated under the laws of this state for conducting a telegraph and telephone business, filed with the city council of the city of Brownwood, which is a city incorporated under the general laws of this state, its petition, stating that its domicile was at Goldthwaite, Tex., and that it desired to build a telephone line for long distance service from the city of Temple along the right of way of the Gulf, Colorado & Santa Fé Railway to Brownwood, and presented therewith, for its inspection and approval, a map or plat of the route of the proposed telephone line into said city, showing the streets and alleys to be occupied and the location of each pole and fixture to be constructed, representing that, in accordance with said map, they would erect 36 poles, for which it tendered a certified check for the sum of $90, payable to the city treasurer of said city, for the purpose of holding the city harmless against any damage that might be done to its sidewalks, streets, or alleys in the erection thereof, to be returned when the city marshal should report that the conditions of the ordinances relating to telephone lines shall have been complied with; further representing that it desired to erect poles and fixtures for the aforesaid line under the provisions of the ordinances having reference to the construction of telephone lines, the same being articles 108 to 116, inclusive, of the civil ordinances of said city, declaring its acceptance of all the provisions of said ordinances, and agreeing to abide by all ordinances and regulations thereafter to be adopted relating to such lines; and further agreeing to permit the city of Brownwood to occupy and use the top cross-arms of any poles so to be erected by it for telephone, telegraph, police calls, or fire alarm purposes, free of charge, praying that said city council accept the tender so made, approve the map and plat and the proposed setting and construction of the poles and fixtures, and, in the event said plat or route may, for any reason, be objectionable or any part of the same, then asking the council to point out such objection, to the end that such plat and route along the streets and alleys of the city may be changed to meet such objection.

Said city had theretofore enacted the following ordinances relating to the construction of telephone lines, designated under the head of "Criminal Ordinances," to wit:

Article 108: "All telegraph and telephone poles used as herein provided shall be of sound timber, not less than five inches in diameter at the upper end, straight, shapely and of uniform size, neatly planed or shaved and thoroughly painted with lead and oil, paint of such coloring as the city council may direct, and shall be supplied with iron steps commencing within twelve feet of the ground and reaching the arms supporting the wires. Said wires shall be run at a height of not less than twenty-four feet from the ground, and the arms lengths shall be determined by action of the city council. When poles or other fixtures are erected on a street they shall be placed if practicable, on the outer edge of the sidewalk just inside of the curbstone or a line dividing the lots of property owners, but in no case to be placed so as to interfere with, or damage the curbstone, trees or other public or private property."

Article 110: "That any person or corporation desiring to erect or construct said poles or fixtures, shall make a deposit of $2.50 for each and every pole to be erected, and the same shall be held by the city treasurer for the purpose of holding the city harmless against any damage caused to sidewalks, streets and alleys in the erection of poles, and the said deposit shall be returned to the parties making the same when the city marshal shall report that the conditions of this chapter have been complied with, and such persons shall first submit to the city council for its approval a map or plat of the route of the proposed line or lines, showing

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the streets and alleys to be occupied and location of each pole or fixture to be constructed. Unless the city council approves of the same, such person or corporation or their agents shall have no right to erect such poles, or construct such fixtures. All work pertaining to the erection or construction of such poles on any sidewalk or alley, shall be done under the supervision of the city council, and the pavement shall be restored to its original condition as soon as possible."

Article 112 provides that "all persons, companies or corporations desiring to erect poles and fixtures under the provisions of this ordinance shall first file, in the office of the city secretary, a written acceptance of all the provisions of this ordinance; also a written agreement permitting the city of Brownwood to occupy and use the top cross-arms of any pole erected for the use of said city for telegraph, telephone, police calls or fire alarm purposes, free of charge."

Article 114 of said ordinances provides that "every violation of any of the provisions of the articles under the subject of 'offenses pertaining to poles and wires' shall constitute a misdemeanor, and the persons or companies or corporations, or any employé, agent, local manager or officer thereof in Brownwood violating any of said provisions shall, upon conviction in the corporation court be fined in any sum not less than twenty-five dollars nor more than one hundred dollars for each offense."

On the 16th of April, 1912, by motion, said petition was referred to the street committee to investigate and make report at the next regular meeting of said council, which on the 7th of May thereafter reported to the effect that they had investigated the route, over which said company proposed to enter said city, and that they found no objection to the use of the streets and alleys for the construction of said line into the city of Brownwood as designated on the map of said route, provided that the construction of the same complied in all respects with the ordinances relative to the construction of such lines in said city, and that the legal rights of all other telephone, telegraph, and electric light companies be respected. Hearing upon this report was postponed until the 21st day of May thereafter, whereupon, after being duly considered, the council refused to concur therein, and denied such permit to the company, ordering that its petition, map, and certified check be returned. At this time appellee had already constructed its line from Goldthwaite to the city of Brownwood at an expense of $5,000, and had upon the ground at Brownwood some $700 worth of material with the view of constructing its line in said town, but was prevented from so doing by threats of prosecution on the part of the officers of said city in the event it undertook so to do. Thereupon appellee

presented its petition to the district judge, setting up these facts, as well as others which may hereafter be noticed, praying for a writ of injunction as heretofore indicated, which was granted, and the case set for hearing.

The main contentions of appellants, both in the trial court and here, are that the court erred in granting the relief asked because, first, the effect of granting it was to divest appellant of the possession of its streets and vest the same in appellee—a possession it had enjoyed for many years—second, the facts alleged in appellee's petition showed that it had three full and complete remedies at law: (1) By defeating the threatened criminal prosecution in the courts; (2) by testing the validity of the ordinances under habeas corpus; and (3) by mandamus to compel action by the city council. It is next urged that the right to designate where the poles should be located belonged solely to the city of Brownwood, and that the court had no jurisdiction, directly or indirectly, to review or regulate the exercise of such right, and further that the ordinances set out in appellee's petition, which were alleged to be void, were a valid and lawful exercise of the city's police powers expressly vested in it by the laws of Texas, and it appeared from its own petition that it had not complied therewith in the proceedings before the council on its application for permit in the following respects: (a) That no such deposit of money with the city treasurer was made as required by said ordinances, but instead thereof that said company had merely deposited a certified check; (b) it was not shown to said council that M. L. Brown, the president and general manager, had any authority to bind said corporation or act for it in the matter; (c) that plaintiff had not offered in said application to construct the character of line required by the ordinances of the city, nor did it furnish said council any specifications or evidence tending to show the character of line it had intended to build; (d) that it had not offered to build its line in accordance with the governing ordinances, but proposed to comply with ordinances not governing that matter, to wit, civil ordinances, whereas the ordinances controlling such proceedings were in fact criminal ordinances of said city. It further urged that the undisputed evidence in the case showed that the plaintiffs wholly failed to comply with the law and the governing ordinances of the city in its application and the accompanying plat presented to the city council asking for a designation on the part of the city of places for setting its poles. And finally contending that, while appellee might have the right to conduct a long distance telephone business within said city, it had no right to establish a local exchange therein.

[1] Article 1231, c. 13, of the Revised Stat-

utes of 1911, provides that: "Corporations created for the purpose of constructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this state, in such manner as not to incommode the public in the use of such roads, streets and waters." This article, while failing to mention telephone lines, has been construed to be applicable thereto by our Supreme Court in the case of San Antonio & A. Pass Ry. Co. v. S. W. Telegraph & Telephone Co., 93 Tex. 313, 55 S. W. 117, 49 L. R. A. 459, 77 Am. St. Rep. 884. Article 1235, same chapter, provides: "The corporate authorities of any city, town or village through which the line of any telegraph corporation is to pass may, by ordinance or otherwise, specify where the posts, piers or abutments shall be located, the kind of posts that shall be used, the height at which the wires shall be run; and such company shall be governed by the regulations thus prescribed; and, after the erection of said telegraph lines, the corporate authorities of any city, town or village shall have power to direct any alteration in the erection or location of said posts, piers or abutments, and also the height at which the wires shall run, having first given such company or its agents opportunity to be heard in regard to such alteration."

[2] Article 854, R. S. 1911, gives exclusive control and power, over its streets, alleys, public grounds and highways to the city, with the right to abate and remove any encroachments or obstructions thereon. It has been held that these articles are not in conflict, and that the powers given the city under the last article are subordinate to those given the company under the first. See City of Texarkana v. S. W. Tel. & Tel. Co., 48 Tex. Civ. App. 16, 106 S. W. 915. Under the doctrine there announced, it seems that the state has exclusive control over its highways, and, having granted the franchise by article 1231 to telephone companies to construct their lines through the streets of any city, that the privilege thus granted gave to appellee the right to the use and occupancy of the streets, subject only to the right on the part of the city to specify the kind and character of poles, the location thereof, and the height the wires shall be run. So, if this be true, the first contention asserted, to the effect that the granting of the writ divested appellant of its right to possession of the streets is not maintainable, this right having been granted by the state to the company. Said contention is therefore overruled.

[3] Nor do we think there is any merit in the contention that by granting the writ the court, directly or otherwise, exercised a right belonging to the city, to wit, that of designating where the poles should be locat-

ed: First, because the city had, in fact, by ordinance made such designation and location, and the company, by its pleadings and evidence, showed that it had conformed to such designation and expected to erect its line in accordance therewith. And, in addition to this, the city upon proper application had declined to act without any good reason for its refusal; and such failure on its part, we think, authorized the company to proceed with the construction of its line in accordance with the ordinance of said city. Said ordinance was general, directing where poles should be placed, and did not restrict their location to any particular street or streets. Therefore it would seem to us, in the absence of any affirmative action on the part of the city, indicating that it desired to make a different specification than that contained in the ordinance as to the location of poles, that the company would be authorized, by complying with such ordinance, to proceed with the construction of its line as provided by it. Certainly its refusal to act could not exclude the company, for no such power was vested in the city council. It is said in 27 Am. & Eng. Ency. Law, 1006, 1007, that: "The extent of the municipality's power to grant or refuse to a telegraph or telephone company the right to occupy the streets and highways within its limits must depend upon the provisions of its charter and of the legislation in force in the state. As a general rule such companies are given by statute the right to occupy all streets and highways; but it is made the right and duty of each municipality to fix the terms and conditions upon which its own streets may be used. Where this is true, the municipality cannot, either by refusing to name the conditions or by imposing unreasonable restrictions or conditions, defeat the grant of the right given by statute. If the statutory grant is unconditional, the municipality is without power to impose any conditions, and its officers cannot interfere with the company in its proper exercise of the privilege granted." In Jones on Telegraph & Telephone Companies, § 94, in discussing the power of city councils under similar statutes, it is said that they have the right to regulate, but not to interdict, and their regulation, to be valid, must be reasonable and fair. See, also, American Union Tel. Co. v. Town of Harrison, 31 N. J. Eq. 627. Where the statute has authorized the construction of a telephone line along its public highways, a municipality cannot exclude it from the use of its streets unless, as is sometimes the case, the statutory provision is conditional on the obtaining of consent of the local authorities. See 37 Cyc. 1627, subd. 3; Texarkana v. Telegraph Co., supra. "While the right to construct lines within the city may be regulated by its council, still they cannot defeat this right or grant to the company

given by legislation by either refusing to name the conditions or by imposing unreasonable conditions or restrictions." Section 81, p. 71, Jones on Telephones. See, also, Zanesville v. Zanesville Telegraph & Telephone Co., 64 Ohio St. 67, 59 N. E. 781, 52 L. R. A. 150, 83 Am. St. Rep. 725. It is further said in 37 Cyc. 1634, that "the municipality cannot, however, under the guise of legislation, practically exclude such company as by demanding a compliance with unauthorized and improper conditions, or by failing or refusing to designate the location of poles, or to make other necessary regulations, or to grant a permit for the making of necessary repairs upon lines already constructed."

The city, therefore, was without the right to exclude and prevent the company from occupancy of its streets. It merely had the right to direct where the poles should be placed. This it had undertaken to do by an ordinance which appellee had agreed to comply with, and offered, in the event its application was not sufficient, to make it conform to any suggestions on the part of the council, but the council merely refused to act, by which, it seems to us, it waived its privilege in this respect, whereupon the appellee, in our opinion, had the right to proceed with the work in accordance with the designation as made by the ordinance. If this be true, then it also follows that the court did not err in granting the writ forbidding the city and its officers to interfere with the progress of the work.

[4, 5] With reference to the objection that appellee had a full, complete, and adequate remedy at law, and hence the court should have refused the writ, it must be observed that appellee, having shown itself entitled to an injunction under the principles of equity provided by statute, was entitled to the writ where it was threatened with irreparable injury to its property rights, independent of whether it had an adequate legal remedy or not. R. S. 1911, art. 4643; Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994; Goar v. City of Rosenberg, 53 Tex. Civ. App. 218, 115 S. W. 653; Denton v. McDonal, 135 S. W. 1148, 34 L. R. A. (N. S.) 453; City of San Antonio v. Salvation Army, 127 S. W. 860; Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 82; Ex parte Warfield, 40 Tex. Cr. R. 413, 50 S. W. 933, 76 Am. St. Rep. 724. In Sullivan v. Dooley, supra, it is said: "An action for injunction may be maintained in cases where it shall appear that the party applying is entitled to the relief demanded, and such relief, or any part thereof, requires the restraint of some act prejudicial to the applicant, although there may be an adequate remedy at law. Our present statute provides that where irreparable injury to personal property is shown, the writ may issue, irrespective of any remedy at law." In Sumner

v. Crawford, supra, it is held that an injunction may issue, although there is an adequate remedy at law. It is also said that it is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. But if the right to occupy the streets and erect its poles was a valuable right, any unjust and illegal interference therewith, in such manner that a full and adequate redress could not be afforded by a court of law, it would be entitled on an application to a court of equity to relief by injunction. There is no question here but that interference with its right to promptly proceed towards the completion of its line subjected it to great delay and consequent loss; and if, therefore, full and adequate redress could not be afforded by a court of law, it would be justified in applying to a court of equity for relief. The evidence showed that the work from Goldthwaite to the city of Brownwood had just been completed at great expense, and that the main reason for the construction of the line was to connect the cities of Temple and Brownwood, which would furnish its greatest revenue, and without which it must operate at a loss. Surely a valuable right was involved and most seriously affected by the dilatory action of the city council in refusing, without just excuse, to act upon its application, or to indicate to appellee in what respect it was deficient, to the end that it might conform to the demands of the council in this regard. This conduct was, in effect, a practical denial of appellee's right to construct its line along the streets of the city of Brownwood. If this action was unlawful, then there must be some remedy whereby the wrong could be redressed. The city, through its council, was refusing to permit it to exercise a plain legal right granted by the statute, provided the company offered to comply with the city's right of selection. It filed its petition, accompanied by its map showing the proposed location of its poles, offering to erect the poles in conformity with the ordinance, tendering a certified check to cover any loss or damage that might be occasioned by such work, and, as before said, proffering to meet any demands the city council might make, but to this proffer no satisfactory answer was given. On the contrary, the company was informed that, if it undertook to proceed, its employés would be arrested and prosecuted for unlawfully obstructing the streets. Confronted by this dilemma, it appealed to the courts for redress. Can it be said that the law afforded a plain, complete, and adequate remedy? We think not. It required many men to construct its line; each of them was threatened with prosecution. The trial of these respective cases, if it did not have the effect of deterring others from engaging in the em-

ployment of the company, certainly would have a tendency to delay, annoy, and harass those engaged in the work, and brings the case within the rule announced by the court in City of Austin v. Cemetery Association, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114.

[6, 7] Nor can it, we think, be said that mandamus should have been resorted to for the reason, as suggested by appellee, that the council had already acted upon the plaintiff's application, refusing it. Nor should the writ have been denied, in our judgment, for the reason, as asserted, that a certified check was deposited with the city treasurer, instead of money, to cover the anticipated damages. Certainly such check was, in contemplation of law, equivalent to a deposit of the money, and it would be exceedingly technical to hold that this constituted any reason for a refusal to grant the permit.

[8] It was not necessary, we think, for the petition to have alleged or shown that the president and manager of the company had authority to act on behalf of the plaintiff in presenting its petition to the city council, because, in our opinion, this should be presumed, in the absence of any plea raising such issue. The petition did disclose the character and kind of line it proposed to construct, and offered to comply with the ordinances upon the subject.

[9] We think the objection urged that the reference in appellee's petition was to the civil ordinances of the city instead of to the criminal ordinances is hypercritical and without merit. The ordinances were set out and referred to, and it appeared that these were the only ordinances governing such matters, and it was immaterial whether they were referred to by appellee as civil or criminal ordinances, under the circumstances.

It is contended, in effect, on the part of appellant by its sixteenth assignment, that, even though it be conceded that the company had the right to operate a long distance line within said city, yet it was not authorized to establish therein a local exchange. While we do not consider it necessary to pass upon this contention for the reason that the evidence only showed that it was the purpose and object of the company to establish and maintain a long distance line, yet it may not be improper to observe in passing that article 1231, R. S. 1911, supra, does not seem to make any distinction between local and long distance lines in granting the right to such companies to construct and maintain their lines upon and across any of the public roads and streets of such cities. The remaining assignments have been duly considered, and are regarded as not well taken.

Believing that the court did not err in granting the writ, its judgment is affirmed.

Affirmed.