HINTON v. D'YARMETT et al.   (No. 9152.)

(Court of Civil Appeals of Texas. Ft. Worth. March 29, 1919. On Motion for Rehearing, May 10, 1919.)

1. INJUNCTION ⟨⟩118(1)—SPECIFIC PERFORMANCE ⟨⟩113—PLEADING—PETITION.

Petition *held* to state cause of action for injunction to restrain removal of oil-drilling equipment and casing delivered to plaintiff under an executed contract, and not an action for specific performance of an executory contract to drill well.

2. CONTRACTS ⟨⟩237(2)—MODIFIED CONTRACT —CONSIDERATION.

Where owner of oil leases assigns shares of stock and his interest in certain oil leases in consideration of assignee's agreement to drill test well, and purchaser from assignee of an interest in the contract· assumes obligation of drilling well, but after commencing work refuses to continue, whereupon contract is modified so as to permit owner himself to drill well with equipment furnished by such purchaser, the preceding contracts and proceedings constitute a sufficient consideration for modified contract.

3. CORPORATIONS ⟨⟩399(2) — IMPLIED AUTHORITY—"GENERAL MANAGER" OF CORPORATION.

The term "general manager" imports general authority to perform all reasonable things in conducting the usual and customary business of his principal.

[Ed. Note.—For other definitions, see' Words and Phrases, First and Second Series, General Manager.]

4. CORPORATIONS ⟨⟩406(4) — IMPLIED AUTHORITY — GENERAL MANAGER — MODIFICATION OF OIL-DRILLING CONTRACT.

General manager of oil-drilling corporation had authority to modify contract under which the corporation was obligated to drill well for owner of oil lease so as to permit owner to drill well with equipment and casing furnished by the corporation.

5. INJUNCTION ⟨⟩59(1)—CONTRACTS—DRILLING OF OIL WELL—REMOVAL OF EQUIPMENT.

Owner of oil leases who has transferred stock and assigned certain oil leases in consideration of use of drilling equipment and casing in drilling test well, and who has sold oil leases conditioned upon the drilling of the well to certain depth, and who has insufficient funds wherewith to himself supply equipment and casing, is entitled to injunction restraining the removal of equipment and casing from premises where drilling of well has commenced, under Vernon's Sayles' Ann. Civ. St. 1914, art. 4643, as to scope of remedy by injunction.

6. INJUNCTION ⟨⟩34—SUBJECTS OF RELIEF— CONSTRUCTION OF STATUTE.

In granting injunction under Vernon's Sayles' Ann. Civ. St. 1914, art. 4643, the court is not confined to the general rules of equity practice on the subject, and will give relief where applicant has a substantial right cognizable in law that is or is about to be invaded, where injunction is necessary to restrain some act prejudicial to him.

Appeal from District Court, Montague County; C. R. Pearman, Judge.

Action by Harley R. Hinton against E. C. D'Yarmett and others. General demurrer to plaintiff's amended petition sustained, and the plaintiff appeals. Reversed and remanded.

Cook & Spencer, of Wichita Falls, and J. W. Templeton, of Ft. Worth, for appellant.
Paul Donald, of Bowie, George B. Rittenhouse, of Oklahoma City, Okl., and Thompson, Barwise, Wharton & Hiner, of Ft. Worth, for appellees.

CONNER, C. J. The only question presented on this appeal is whether the trial court erred in sustaining a general demurrer to appellant's amended petition, which, omitting formal parts, appellees' thus set forth, viz.:

"That plaintiff resides in the county of Montague and the state of Texas. That defendant E. C. D'Yarmett resides in the county of Muskogee, Okl. That the defendant O. M. Topley resides in the county of Oklahoma and the state of Oklahoma, and that defendant Assurance Oil & Refining Company is a corporation duly incorporated under the laws of the state of Oklahoma, its principal office in the city of Oklahoma and the state of Oklahoma; Wallance is its president, and defendant O. M. Topley is, and has been since the 3d day of October, 1917, and continuously thereof its vice president and general manager, and H. W. Munsen its secretary and treasurer.

"That on and prior to the 1st day of October, 1917, plaintiff was the owner and holder of certain leasehold estate in and to various tracts of land situated in Montague county,

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Tex., about 4 miles south from, lying in a body, and consisting of 4,000 acres. That on said date he made and entered into a contract with the defendant E. C. D'Yarmett whereby the latter agreed to drill a well for oil or gas upon the said leasehold estate to the depth of 2,500 feet unless oil or gas, or either of them, are found in paying quantities at a lesser depth, said defendant to furnish all of the necessary tools, labor, casing, and other materials necessary for the proper prosecution of the work, including the tubing and other equipment, plaintiff to furnish certain steel rig then located at a point where it was proposed that the said well should be drilled, of which said defendant should have the exclusive use for the purpose of performing said contract, and it was agreed in said contract that, in the event said well so to be drilled should be productive of oil and gas or either of them, the said material, equipment, tubing, tools, and other personal property thereon, except the drilling tools, shall belong to and be the property of the said Harley R. Hinton, plaintiff aforesaid, and he hereby binds himself and agrees to pay unto said defendant for the same the market price therefor at the time of the completion of said well, said contract being as follows:

" 'Memorandum of Agreement.

" 'This memorandum of agreement made and entered into at Muskogee, Okl., this the 1st day of October, 1917, by and between E. C. D'Yarmett first party, and Harley R. Hinton, second party, witnesseth:

" 'Whereas the second party is the owner of certain leasehold estate in and to a tract of real estate situated in Montague county, state of Texas, and desirous to have a test well drilled thereon for oil and gas or either of them; and

" 'Whereas, there is located on the lands above described one certain steel rig, the location thereof being known to both parties to this contract:

" 'Now, therefore, for the consideration herein mentioned and agreed upon to be paid and performed by the second party, the said first party hereby agrees to drill a well for oil and gas upon this leasehold estate belonging to the second party, such well to be located at the place where the above-recited derrick now is upon said property, and the same to be drilled to the depth of twenty-five hundred (2,500) feet unless oil or gas or either of them be found in paying quantities at a lesser depth, it being understood that the said first party shall furnish all the necessary tools, labor, casing, and other materials necessary for the proper prosecution of the work, including the tubing and other equipment, in the event the well should produce oil, but including the rig, it being the further understanding and agreement of the parties that the said first party, for the purpose of drilling said well, shall have the exclusive use of the above-mentioned rig for the purpose of performing this contract. And the said first party agrees to commence the operations under this contract within a period of fifteen (15) days from and after the date when abstracts are furnished covering the leasehold estate to be assigned unto the first party, in accordance with the provisions of this contract hereinafter contained.

" 'It is further understanding and agreement of the parties hereto that, in the event the test well so to be drilled should prove to be nonproductive of oil and gas or either of them in paying quantities, all material, equipment, casing, tubing, tools, and other personal property thereon, with the exception of the steel rig above mentioned, shall belong to and be the property of the said first party, but in the event such well should be productive of oil and gas, or either of them, the said material equipment, casing, tubing, tools, and other personal property therein, except the drilling tools, shall belong to and be the property of the said second party herein, and the said second party hereby binds himself and agrees to pay unto the first party' for the same the market price thereof at the time of the completion of said well.

" 'And in consideration of the premises and agreement heretofore contained to be by the first party performed, and for the drilling of such well, the said party hereby sells and transfers to the first party two hundred and fifty thousand (250,000) shares of the capital stock of the Big Six Petroleum Company, a corporation of the state of Delaware, and further sells, assigns, and transfers unto the said first party all of his rights, title, and interest in and to certain oil and gas leases which are particularly mentioned and set forth in schedule A which is hereto attached and made a part of this contract.

" 'And for the sum consideration the said second party hereby binds unto the first party the exclusive right and option of six (6) months to purchase from the second party five hundred thousand (500,000) shares of the capital stock of the Big Six Petroleum Company, a corporation, at the price of twenty (20) cents per share.

" 'The said second party further agrees to furnish abstracts of title to all of the real estate mentioned and described in Schedule A hereunto attached, such abstract to show valid oil and gas leases on each of said tract in the name of the belonging to the second party herein, and the title to the real estate therein described to be good and marketable, free and clear of and from all incumbrance and prior leases in the name of the respective leasors therein mentioned.

" 'It is the intention of the parties hereto that actual transfers of the two hundred and fifty thousand (250,000) shares of stock herein mentioned and the oil and gas leases mentioned in Schedule A shall be made at any time after the date hereof when requested by the first party, and to the effect that end the second party has executed concurrently herewith an order upon the United States Corporation Company at No. 38 Nassau street, New York, the register and transfer agent for the said Big Six Petroleum Company, to issue unto the said first party herein the said two hundred and fifty thousand (250,000) shares of the capital stock. It is further understood and the agreement of the parties hereto that the said shares of the capital stock of the Big Six Petroleum Company and the oil and gas leases mentioned in Schedule A shall be transferred and assigned unto the first party or to such parties or per-

sons, firms, or corporation as he may designate.

" 'This contract shall extend to and be binding upon the representative parties hereto, their executors, administrators, and assigns.

. " 'Witness the parties hereto the day and year aforesaid.

" 'E. C. D'Yarmett, First Party.

" 'Harlie R. Hinton, Second Party.

" 'Schedule A.

" 'Description of the leases in Montague county, Texas, agreed to by Harley R. Hinton to be assigned to E. C. D'Yarmett or his assigns:

" 'Tract No. 119 of the John H. Belcher subdivision, being 160 acres of the leases of J. W. Belcher and wife to A. A. Berch to Harley R. Hinton, dated June 1, 1916, and recorded in Montague county, Tex., records, Book 85 of the Deed Records at page 303.

" 'Tract No. 118 of the John H. Belcher subdivision, being 160 acres of the lease of J. D. Bybee and wife L. A. Bybee, to Harlie R. Hinton, dated May 31, 1916, and recorded in Montague county, Tex., records, Book 85 of the Deeds at page 306.

" 'Tract No. 117 of the John H. Belcher subdivision, being 160 acres of the leases of A. J. Cox and wife, L. E. Cox, to Harley R. Hinton, dated June, 1916, and recorded in Montague county, Tex., Record Book No. 85, page 309.

" 'The north 75 acres of tract 132 of the John H. Belcher subdivision, being the leases of C. C. Long and wife, Rillie Long, to Harley R. Hinton, dated June 1, 1916, and recorded in Montague county, Tex., records, Book 85 of the Deeds at page 341.

" 'The south 85 of tract No. 132 of the John H. Belcher subdivision, being the lease of J. A. Wilson and wife, I. A. Wilson, to Harley R. Hinton, dated June 1, 1916, and recorded in Montague county, Tex., records, Book 85 of Deeds at page No. 357.

" 'The north 80 of tract No. 131 of the John H. Belcher subdivision, being a part of the lease of D. G. Dunn and wife, M. B. Dunn, to Harley R. Hinton, dated June 1, 1916, and recorded in Montague county, Tex., records, Book 85 of Deeds at page 313.

" 'Tract No. 130 of the John H. Belcher subdivision, being the lease of W. L. Kennedy and wife, Mattie Kennedy, to Harley R. Hinton, dated June 1, 1916, recorded in Montague county, Tex., records, Book No. 85, page 335.

" 'The north 80-acre tract of No. 156 of the John H. Belcher subdivision and tract No. 155 out of the John H. Belcher subdivision, being the lease of J. B. Reeves and wife, Modarie Reeves, to Harley R. Hinton, dated June 1, 1916, recorded in Montague county, Tex., records, Book 85 of Deeds at page 351.

" 'The south half of tract No. 156 and the E. ¾ of tract No. 265 of the John H. Belcher subdivision, being the lease of John Kirby and wife, Della Kirby, to Harley R. Hinton, dated June 2, 1916, and recorded in Montague county, Tex., records, Book No. 85 of Deeds at page No. 326.

" 'Tract No. 154 and the W. ½ of tract No. 153 of the John H. Belcher subdivision, being the lease of C. H. Kirby, a widower, to Harley R. Hinton, dated June 1, 1916, in Montague county, Tex., record deeds, Book 85 of Deeds at page 323.

" 'Tract No. 156 and a part of tract 184 of the John H. Belcher subdivision, being the lease of M. F. Kirby and wife, Fannie Kirby, to Harley R. Hinton, dated June 1, 1916, and recorded in Montague county, Tex., records, Book 85 of Deed Records at page No. 329.'

"That by the terms of said contract plaintiff, Harley R. Hinton, sold and transferred to defendant E. C. D'Yarmett 250,000 shares of the capital stock of the Big Six Petroleum Company, a corporation of the state of Delaware, and contracted to sell, assign, and transfer to said defendant all of his right, title, and interest in and to a certain oil and gas lease, which are mentioned and described in Schedule A attached to said contract. That, in pursuance of said contract, plaintiff has furnished abstracts of title to all of the real estate mentioned and described in said Schedule A showing valid oil and gas leases on each of said contract in the name and belonging to plaintiff.

"That thereafter, on the 3d day of October, 1917, defendant E. C. D'Yarmett and O. M. Topley made, executed and delivered a certain assignment and contract in reference to said contract made and entered into by plaintiff and defendant E. C. D'Yarmett, whereby said E. C. D'Yarmett sold and assigned unto defendant O. M. Topley an undivided one-third interest in and to said contract, said assignment being in words and figures as follows:

" 'Assignment.

" 'Whereas, E. C. D'Yarmett is the owner and holder of certain contract made and entered in by and between the said E. C. D'Yarmett as first party, and Harley R. Hinton, as second party dated 1st day of October, 1917, a copy of said contract being hereto attached and in all respects made a part hereof:

" 'Now, therefore, for the consideration hereinafter mentioned, the said E. C. D'Yarmett hereby sells and assigns unto O. M. Topley an undivided one-third interest in and to said contract.

" 'And as a full consideration for the transfer of said undivided interest in and to the above-described contract, the said O. M. Topley has paid unto the said E. C. D'Yarmett the sum of one dollar ($1.00), the receipt which is hereby acknowledged, and further agrees to assume and to pay a proportionate amount of the expenses and cost incurred by the said E. C. D'Yarmett in the performance, and to furnish casing, tools, etc., for drilling of test well. The provisions of this agreement and the agreement herein contained shall inure to the benefit of and shall be binding upon the respective executors, administrators, and assignors of the parties hereto.

" 'Witness the said E. C. D'Yarmett, the assignor, and the said O. M. Topley, assignee, herein this the 3d day of October, 1917.

" 'E. C. D'Yarmett, Assignor.

" 'O. M. Topley, Assignee.'

"That therefore defendant O. M. Topley executed an assignment in writing of the above assignment to the defendant the Assurance Oil & Refining Company in words and figures as follows:

" 'For and in consideration of one dollar, value received, I hereby assign all my right,

title, and interest in the within contract to the Assurance Oil & Refining Company, this the 8th day of December, 1917.

"'O. M. Topley.'

"That, in pursuance of said contract and the assignments thereunder as above quoted and as therein agreed, defendant O. M. Topley and the Assurance Oil & Refining Company moved the well-drilling equipment, boiler, engine, string of tools, casing, and other personal property, as hereinafter mentioned, upon the premises of D. G. Dunn, the location thereof agreed upon, and where said steel rig was located, and that drillers were employed by defendants, and the work of drilling said well was begun.

"That it was agreed by the parties hereto that plaintiff should sell such part of the said 2,000 acres leasehold as would be necessary to procure sufficient funds to meet the expenses of drilling said well, and in pursuance of such agreement plaintiff has sold in leasehold 1,400 acres of said 2,000 acres to various parties, and has received therefor between $10 and $11, and it was a part of the consideration with said purchasers that a well should be completed to that depth, to which plaintiff became and is necessary and legally bound, and that, according to said agreement, he made transfers direct to such purchasers. That said sum of money have been expended in the prosecution of said contract in the drilling of said well.

"That, in pursuance of said contract and assignments, drillers were employed and the drilling of said well was begun as aforesaid, the well was dug to the depth of 750 or 800 feet, at which depth certain tools were lost in the hole, and after considerable time and effort said tools were yet unremoved therefrom. That, in the absence of the plaintiff, defendant O. M. Topley came down from Oklahoma City, and, without the knowledge or consent of plaintiff, drew the casing out of said hole, and was at the time and before the institution of this suit preparing to remove said casing and said equipment off of said land and premises and out of the state of Texas, which drilling material is as follows: One boiler and engine, a complete string of tools and drilling equipment, and casing as follows: About 120 feet of 12½-inch, about 800 feet of 10-inch, about 1,400 feet of 8½-inch. All of said equipment and casing are the equipment and casing agreed to be so furnished and were furnished on the ground by defendant O. M. Topley and the Assurance Oil & Refining Company, which said boiler, engine, tools, and equipment are of the value of $7,000, and said casing is of the value of $4,-000. That, unless the temporary writ of injunction heretofore prayed for and granted in this cause be perpetuated, said defendant will remove said equipment and casing off of said premises and out of the state, and plaintiff would be defeated in the use thereof, and owing to the large amount of the acreage already used, and, expended of the leasehold heretofore obtained by the plaintiff, he would not be able to purchase other drilling outfit and the necessary casing for the completion of said well as agreed by the first contract and as agreed by and between plaintiff and the purchasers of the leasehold in said 1,400 acres. That a failure to finish said well according to the agreement will cause a forfeit of the oil and gas leases as aforesaid, and subject plaintiff to the repayment of the amounts received and expended under said contract to the purchasers of leasehold in the said 1,400 acres of land, and that, unless the said temporary writ of injunction is made permanent, and plaintiff be allowed the use of said drilling outfit and casing, he will suffer great and irreparable injuries and damages. That said restraining order theretofore made in this cause is as follows, to wit:

"'In vacation, Denton, Texas, October 14, 1918.

"'Upon execution and filing with the district clerk of Montague county, Tex., by plaintiff, of a good and sufficient bond in the sum of $1,000 as provided by law, said clerk will issue a writ of injunction restraining defendants, either in person or by agent, from selling, hypothecating, or otherwise disposing of any part of the machinery or equipment described in this petition or in any way interfering with plaintiff's possession thereof as same now exists, and from removing same or any part thereof from said premises pending this suit. The prayer for mandatory writ of injunction denied before hearing the testimony.

"'John Speer, Judge 16th District.'

"That, after said tools were so lost in said hole, plaintiff and defendant O. M. Topley, for himself and as vice president and general manager for defendant Assurance Oil & Refining Company, made agreement that plaintiff take control and management of the drilling of said well, and he was then and thereby given control and custody of said equipment and casing, and as such control and management of said equipment and casing at the time said defendant drew the casing aforesaid, and was threatening to undertake to remove same from the premises, plaintiff has no adequate remedy at law.

"Wherefore, a temporary writ of injunction having been heretofore granted, and defendant having been cited and having filed their respective answers herein, plaintiff prays that said temporary writ be made permanent restraining defendant from moving said drilling outfit and casing described above from said premises, or in any way interfering with plaintiff's possession and use of same until said well is completed to the depth of 2,500 feet according to said contract, and that they be also restrained from selling or in any wise disposing of said drilling equipment and casing so as to interfere with plaintiff's possession thereof, and that plaintiff has completed said well according to the said contract, and that an order therefore be entered to that effect, for his damages, and for the cost of this suit, and for general relief."

Appellees urge many reasons in their briefs in support of the court's ruling. It is insisted that the petition fails to allege that appellant had or could sell enough of his 2,000-acre leasehold to meet the expense of drilling the well in question, and hence fails to show performance or an ability to perform the contracts on his part, and that for this reason appellant is not entitled in equity to a specific performance of the contract. To the same end it is further insisted that the peti-

tion is fatally deficient in that it fails to allege that appellant had furnished abstracts showing good and marketable title free from all incumbrances and former leases to his leasehold lands as provided by his contract, and fails to show that the tools lost in the well as partially drilled can be removed and the well completed to a depth of 2,500 feet as provided in the contract, and fails to show that there was any consideration for or authority in O. M. Topley to act for the Assurance Oil & Refining Company to agree that appellant might take control, manage, and drill the well contemplated by the contracts between the parties.

There may be other supposed defects in appellant's petition thought to be material by appellee, but they are all of like import with those we have noted, and all are urged in support of the same general proposition which may be epitomized by the following brief quotation from one of appellee's propositions, viz.:

"It is apparent from the allegations in the petition on which this case was decided that the appellant is not only directly, but indirectly, trying to enforce by injunction specific performance of the contract or contracts mentioned and set forth in his petition."

The contentions, as before indicated, are that such specific performance cannot be awarded for the reasons assigned, and that hence the court correctly held the general demurrer to be good.

We are of opinion, however, that appellee's construction of appellant's petition, with which they evidently impressed the trial court, is wholly wrong. Much of the reasoning, therefore, and many of the authorities presented in aid of the court's ruling, have no application and will not be discussed.

[1] It seems manifest to us that the appellant's petition, in its relation to the order appealed from, should not be construed as seeking a specific performance of the unexecuted contracts mentioned. There is no prayer for any such relief, nor does the dissolved order extend any such relief. Nor does the petition seek a recovery of damages because of the failure of appellees to drill the well as they contracted to do. On the contrary, the only prayer was to the effect that appellant be left undisturbed in the possession and use of drilling tools delivered to him under a contract. If appellee actually delivered to appellant the specified tools, as alleged, pursuant to a valid agreement to do so, then the agreement or the contract was an executed one, and not executory in the sense that the court's aid was needed. It had already been performed. It had already served its primary and principal purpose. What was left was for appellee to do in completing the well; the original contracts being modified to this extent. The relation of the contracts and other things antedating the contract under which appellant became possessed of the tools is to be viewed, we think, as merely leading up to and explanatory of the contract for the attempted breach of which appellant complains.

[2-4] There can be no doubt, we think, that the preceding contracts and proceedings, as alleged, constituted a sufficient consideration for the new or modified agreement. Galveston v. Ry. Co., 46 Tex. 435, Foley v. Storrie, 4 Tex. Civ. App. 377, 23 S. W. 442. And while the petition should perhaps have been a little more specific on the point, we nevertheless think the allegations as a whole sufficiently show, as against a general demurrer, that the appellee oil and refining company is so far bound upon the new contract as to at least preclude disturbance of appellant's possession of property thereunder. As alleged, within a few days after D'Yarmett made the original drilling contract with appellant, Topley purchased an interest therein and assumed part of its obligation. Soon thereafter the oil company took an assignment of said interest from Topley, and thus made itself a party to the original agreement. Indeed, the expressed consideration for the Topley assignment was but nominal, which, with other circumstances, seems to raise the inference that Topley's purchase from D'Yarmett was in truth a purchase for the benefit of the oil company of which he was vice president and general manager. "O. M. Topley and the Assurance Oil & Refining Company," as is alleged, moved the well-drilling equipment in controversy to the designated spot, employed drillers, and began drilling the well. It seems plainly inferable from the petition, as a whole, that the difficulty specified in drilling the well, together with the failure or refusal of the oil company to continue, was the originating cause or inducement for the modifying agreement, which evidently shifted the burden of completing the well under the terms of the original contract with D'Yarmett, as it had undertaken to do, from the oil company to the appellant. In other words, the new or modifying contract was plainly in the interest and for the benefit of the oil company, and to secure such benefit and as an inducement thereto, we think it was within at least the apparent scope of O. M. Topley's authority to agree that appellant might take and use the well equipment in question as specified in the new agreement. It is alleged that O. M. Topley was the appellee oil company's "general manager." The very terms import general authority to perform all reasonable things in conducting the usual and customary business of his principal. In Railway Co. v. Reisner, 18 Kan. 458, it was held that the terms "general manager" and "general agent" are synonymous; that the general agent of the company was virtually the corporation itself, and

therefore had authority to bind the company for the expense of board, etc., for an injured brakeman. While a general agent may not ordinarily, without special authority, surrender important rights of his principal, yet there are many cases, says Mechem in his work on Agency, p. 991, where a "general manager" or "general agent" (and he treats the terms synonymously) "may meet emergencies, and provide for unexpected exigencies, and these may involve waivers of time, or alterations of terms, as waivers of condition, or surrender of technical rights, as mere natural and ordinary incidents." Numerous illustrations of the test are given in the notes, and we think the allegations of appellant's petition bring this case within the principle stated, especially in view of the fact that, viewing the petition as a whole, the new contract is so manifestly for the benefit of the oil company and so apparently within the scope of the business and practice of developing oil companies as generally understood.

[5, 6] But without further discussion we conclude that the allegations of appellant's petition are sufficient to show that the contract under which he acquired the possession of the property in question was upon a sufficient consideration and binding upon the appellee oil company, and that by virtue thereof appellant has the right to the undisturbed possession and use of the property described in his petition as contemplated by the contract. Assuming this to be true, what remains for determination is very simple and requires but brief notice. Our statutes on the subject authorize writs of injunction "where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant." See 3 Vernon's Sayles' art. 4643. In granting the relief authorized by this statute, we are not confined to the general rules of the equity practice on the subject. Generally all that is required is that the applicant has a substantial right cognizable in law that is or is about to be invaded, and that a writ of injunction is necessary to restrain some act prejudicial to him. Under the circumstances alleged in this case and as against a nonresident corporation, it seems clear to us that no other remedy is as adequate or as efficacious as the writ of injunction, and we think the trial court erred in his said order sustaining the demurrer, and in dissolving the temporary writ of injunction theretofore issued. See Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994; Birchfield et al. v. Bourland, 187 S. W. 422; Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 83; El Campo Co. v. Water & Light Co.. 63 Tex. Civ. App. 393, 132 S. W. 868;

City of Brownwood v. Tel. Co., 152 S. W. 709; Mitchell v. Burnett, 57 Tex. Civ. App. 124, 122 S. W. 937; Tomlin v. Clay, 167 S. W. 204; Cement Co. v. Am. Cement Co., 167 S. W. 183; Tel. Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1049; Lakeside Irr. Co. v. Kirby, 166 S. W. 715.

The judgment below is accordingly reversed, and the cause remanded.

### On Motion for Rehearing.

Appellees present a very voluminous and insistent motion for rehearing. Its length precludes any extended notice. We can only say that the motion has been carefully examined, and we can but think, as expressed in our original opinion, that the court erred in sustaining the general demurrer to appellant's petition. To the authorities cited in our original opinion we wish to add the case of Booker-Jones Oil Co. v. National Refining Co., 63 Tex. Civ. App. 142, 131 S. W. 623, 132 S. W. 815. We refer to this case and to the authorities therein cited as supporting the effect given by us in our original opinion to the term "general manager."

We think the motion for rehearing must be overruled, and it is so ordered.