PRESLEY F. EDWARDS, Defendant in Error, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Plaintiff in Error.

Kansas City Court of Appeals, December 1, 1902.

1. **Waters and Water Courses:** SURFACE WATER: OVERFLOW-ING STREAM: ACTION. Waters overflowing the banks of a stream are surface water, but one obstructing the natural flow of water in a stream and thereby occasioning overflow is liable for the resulting damages.

2. ———: ———: ———: ———. Evidence in the record is reviewed and found sufficient to send to the jury the question as to whether the defendant railroad had obstructed a stream passing under its track by a piling bridge so as to cause an overflow.

3. **Trial Practice:** ABANDONED COUNTS: JUDGMENT: COSTS. Where there are several counts in a petition and by subsequent pleadings some are abandoned and on the trial others are dismissed, the defendant is entitled to judgment on such counts and the plaintiff should be taxed with the costs incident to such counts and preparation for trial thereon.

Error to Boone Circuit Court.—*Hon. John A. Hockaday*, Judge.

REVERSED AND REMANDED *(with directions)*.

*C. B. Sebastian* and *Geo. P. B. Jackson* for plaintiff in error.

(1) The overflow complained of was occasioned by surface water resulting from excessive rainfall. The defendant was not liable for such damage. McCormick v. Railroad, 57 Mo. 433; Abbott v. Railroad, 83 Mo. 271. (2) Waters overflowing the banks of a stream are to be regarded as surface water. Abbott v. Railroad, 83 Mo. 280; Shane v. Railroad, 71 Mo. 248. (3) In the absence of negligent construction, defendant is not liable for overflow caused by the location of its railroad. 3 Elliott on Railroads, sec. 937; 1 Rorer on Railroads, 313; Clark v. Railroad, 36 Mo. 202; Munkers v. Railroad, 60 Mo. 334; Benson v. Railroad, 78 Mo. 504; Abbott v. Railroad, 83 Mo. 271; Jones v. Railroad, 84 Mo. 151; Moss v. Railroad, 85 Mo. 86; McCord v. Railroad, 21 Mo. App. 92. (4) There was no legal evidence upon which to submit the case on the theory of the plaintiff's instruction. Gurley v. Railroad, 104 Mo. 211; Baker v. Railroad, 122 Mo. 593; Kelsay v. Railroad, 129 Mo. 376; Nugent v. Milling Co., 131 Mo. 252; Hook v. Railroad, 162 Mo. 569; McLachlin v. Barker, 64 Mo. App. 522. (5) The court committed further error in refusing to enter judgment finally disposing of all the counts of the petition. Needles v. Burk, 27 Mo. App. 211; s. c., 98 Mo. 476; Boeger v. Langenburg, 97 Mo. 390. (6) The court also erred in overruling the motion to tax against the plaintiff the costs pertaining to the four counts on which plaintiff failed to recover and in taxing such costs against defendant. R. S. 1899, sec. 1547; Dupont v. McLaran, 61 Mo. 502.

*E. W. Hinton* and *W. H. Truitt, Jr.,* for respondent.

(1) There is no occasion for the respondent to controvert the general proposition that the excess water which escapes the banks of the stream because of the lack of capacity to carry it off, becomes surface water, for the consequences of which no liability attaches. But there is nothing in that doctrine which sanctions the obstruction of a stream so as to force the water out of banks. Brink v. Railway, 17 Mo. App. 177. (2) The costs were rightfully taxed against the defendant. R. S. 1899, sec. 1547; Harrington v. Evans, 49 Mo. App. l. c. 377. (3) It was the imperative duty of the court to tax all costs against defendant. Redman v. Thomas, 39 Mo. App. 143. (4) The filing of the amended petition by plaintiff was an abandonment of all previous petitions. Kortzendorffer v. St. Louis, 52 Mo. 204.

SMITH, P. J.—It may be seen by reference to 82 Mo. App. 96, that when this cause was here on a former appeal the petition was in five counts, the first of which was to recover the value of a strip of ground on which was located the defendant's right of way alleged to have been wrongfully and permanently appropriated. The second was to recover the damages sustained to the plaintiff's land not so appropriated by reason of its being intersected by said railway. The third was for the unskillful and careless location and construction of the line of said railway and the bridges and culverts thereon so as to alter and impede the flow of water across the plaintiff's land, causing the water to overflow and stand upon a large portion of the land and render the same unfit for cultivation. The fourth was to recover damages for the injury occasioned by such overflow in the year 1893, and the fifth count was to recover damages occasioned by such overflow in the year 1894.

There was a trial on these counts resulting in a verdict for plaintiff on all of them except the fourth, upon which it was for defendant; and in accordance with these several verdicts the judgment was given. On the appeal taken by plaintiff we reversed the judgment and remanded the cause.

After the cause was so remanded the plaintiff filed a third amended petition, omitting therefrom the first, second and fourth counts contained in his former petition and retaining only the third and fifth—denominated in the amendment first and second counts.

The answer to the petition thus amended was a general denial. There was a trial and at the conclusion of the evidence the plaintiff dismissed as to the first count leaving only the second—the same as the fifth in the original petition. The verdict was for plaintiff on that count and defendant appealed.

The record brought before us by the present appeal discloses about these facts, namely: that defendant's railway from Jefferson City west to Boonville is located on the north shore of the Missouri river and over and along the valley of that river, skirting as near as practicable the base of adjacent bluffs and hills. The line of this railway between the two terminal points just named passes through the land of the plaintiff. There is a small stream called "Lindsay's Branch" starting back in the hills; it runs south nearly two miles to where it enters the Missouri river valley and there, after deflecting a little eastward, resumes its southerly course across a crescent-shaped piece of plaintiff's land lying between the bluffs and the defendant's railway track, passing under defendant's track and from thence into plaintiff's fields, lying on the south side of such track, a few hundred feet to a point from which it turns west and after going a half mile finally unites with the Bonne Femme.

The defendant's track for some considerable distance east and west of where it crosses Lindsay's branch is laid on an embankment composed of mould, sand, etc., which is from a foot and a half to two feet

high.   There was a piling bridge across the stream on which the defendant's track rested.   It is supported by a row of piling driven into the ground and extending diagonally across the center of the stream.   From the bottom of the bridge to that of the stream is about five feet.   The width of the stream for two hundred feet above the bridge varies from five to ten feet and the top of its banks are about five feet above its bottom. Its flowage basin covers about six or seven hundred acres.   Along its course are occasional springs which are discharged into it and which supply it with some water most of the time.

A few hundred feet north of the railway track the county road crosses the stream on a wooden bridge. About one hundred acres of the plaintiff's land abuts against the railway track on the south, on either side of the bridge.   A reference to the following map will assist in understanding the foregoing description of the *locus in quo*:

There was a heavy rainfall on the twentieth of May, 1894, over the flowage basin of the stream and an immense volume of water collected in it. Timber, brush, leaves and trash were carried into and borne along on the surging current until the piles under the bridge were encountered when it stopped and there formed a drift which obstructed the onward flow. The result was that the water accumulated in the stream until it overflowed the land on either side of it for some distance. The spongy, porous railway embankment against which it was carried by the force of gravitation being too weak to withstand the pressure, gave way when it rushed onward carrying the material composing such embankment with the logs, brush and trash out upon the fields of the plaintiff and depositing them there. The consequence was that forty or fifty acres of growing timothy and clover were totally destroyed by the overflow and consequent deposit.

The law is well settled in this State that waters overflowing the banks of a stream must be regarded as surface water. Abbott v. Railway, 83 Mo. 280; Shane v. Railway, 71 Mo. 248. But in Brink v. Railway, 17 Mo. App. 177, where the overflow complained of was occasioned by the negligent act of the defendant in obstructing the natural water of a stream, it was held there was liability. And to the same effect is Munkres v. Railway, 72 Mo. 514. So the question in the present case is whether or not the overflow damaging plaintiff was occasioned by a negligent act of the defendant in obstructing the natural water of a stream.

It is not to be disputed that Lindsay branch is a natural stream or waterway; and it follows that if, as we think, the evidence tends to show the act of the defendant in placing the piles under its railway bridge in the center of that stream in such a way that when great rains fell in the basin of the stream the volume of the water to be carried off was greatly increased so that the drift brought down from the hills by the current was caught and stopped by the piles and a dam or "rack heap" was thereby formed above the bridge

which obstructed the further passage of the water and caused it to accumulate until it overflowed the banks of the stream, this constituted negligence for which there was liability if damage resulted. The evidence is ample to show that the "logs, brush and trash" brought down the stream were caught against the piles and formed an obstruction that prevented the water from flowing further. The physical conditions which presented themselves after the flood subsided showed that the water which was caused by the obstruction to accumulate above the bridge and along the railway track became for the nonce "dead water" and the logs, stumps, brush and trash which had been brought down by the current of the stream remained there stationary until the railway embankment gave way, when they were carried further on by the moving flood. And the fact that a part of the county bridge was found in the drift that had collected against the railway bridge piles does not conclusively prove that the obstruction did not occasion the overflow. It may have been that after the overflow took place there was still water enough flowing through the railway bridge opening to cause a sufficient current to that point to carry the floating county bridge to where it lodged.

The testimony of the witnesses who had been familiar with the stream and its varied conditions for the last forty years was that they had never known it to overflow its banks above the railway bridge until after it was obstructed by the bridge piling. The consideration of this branch of the case has already been extended to a point beyond which we may not go, so that we must content ourselves with stating that it is our conclusion that the evidence was sufficient to justify the submission of the issue to the jury, and that, therefore, the trial court did not err in denying the defendant's demurrer to the evidence.

The plaintiff by filing his third amended petition in which only two of the five counts of his original petition were retained thereby abandoned the several causes of action stated in those counts. His action as

to such counts was in effect a dismissal. And as he dismissed as to the first count of his amended petition, the defendant was entitled to a judgment on each count so disposed of according to the fact. Either the plaintiff or defendant or both of them may have had witnesses subpoenaed to prove or disprove the issue tendered by such counts, and if so, the plaintiff and not the defendant should pay the cost due the officers issuing and serving the subpoenas for such witnesses as well as the fees of the witnesses themselves; and the defendant was entitled to a judgment to that effect.

Without indicating our opinion as to what would be the effect of a judgment on the abandoned or dismissed counts, it is sufficient to say that the defendant was entitled to the same.

We shall, therefore, reverse the judgment and remand the cause with directions that judgment be given for plaintiff on the second count of the third amended petition in accordance with the verdict of the jury, and that judgment be entered for defendant on each of the counts abandoned or dismissed in accordance with the facts and on the fourth count in the original petition in accordance with the verdict returned at the first trial, as well as for the costs that accrued thereon. All concur.