FRANKS et al. v. ROUSE et al.

No. 30557. May 25, 1943.

*137 P. 2d 899.*

Robert Burns, of Oklahoma City, for plaintiffs in error.

Blanton, Curtis & Blanton, of Pauls Valley, for defendants in error.

RILEY, J. This is an appeal from a judgment and decree enjoining plaintiffs in error, defendants below, from constructing and maintaining a ditch or levee along the division line between tracts of land owned by the respective parties and denying plaintiffs in error injunctive relief against the defendants in error, plaintiffs below. For convenience, the parties will be referred to as in the trial court.

Plaintiffs Rushie L. Rouse and R. M. Rouse are the owners of all the southwest quarter of section 2, township 2 north, range 1 east, except 20 acres and a small tract west of the Santa Fe Railroad right of way. Plaintiff W. O. Gregory was their tenant and farmed a part of their land involved in this action.

Defendants are the owners of the north half of the northwest quarter and the southeast quarter of the northwest quarter of section 11, directly south of and adjoining plaintiffs' land. All of the lands are in cultivation and lie in the Washita river bottom in the vicinity of Wynnewood. In the quarter section directly north of the plaintiffs' land there is an abandoned channel or slough of the Washita river. It cuts into plaintiffs' land about the center of the north line. Flowing into this slough from the northeast about three-eighths of a mile north of plaintiffs' land there is a stream referred to in the testimony and findings of the trial court as "Nigger Sandy Creek."

In 1936 or 1937 defendants cut a ditch along and parallel with the north line of their lands commencing about 600 feet west of the north and south center line, running east about 1,800 feet, where it was connected with a drainage ditch which had been constructed in 1932. The latter runs from the northeast to the southwest and cuts across plaintiffs' land near the southeast corner. At the same time defendants constructed the ditch above referred to, they constructed an embankment or levee along the south side of said ditch and on their land about 4½ or 5 feet high. In April, 1938, during an overflow from the slough, this embankment was washed away. Defendants reconstructed the ditch and embankment, but in so doing they filled up or closed the ditch at the entrance of the old drainage ditch. In May of the same year, in another overflow, the embankment was again washed away. Plaintiffs had filed their petition for an injunction and obtained a restraining order in April, 1938, restraining defendants from reconstructing the ditch or levee. But it appears that the ditch and levee had been reconstructed before the restraining order was served. After the levee was washed away the second time, plaintiffs filed their amended petition for an injunction enjoining defendants from again reconstructing the levee or embankment and praying for a judgment for damages to their crops.

In their amended petition plaintiffs alleged that the embankment complained of was across what is commonly referred to as a swale extending across the lands of plaintiffs and defendants from the north to the south, and that the lands of plaintiffs and defendants are some 18 inches higher on the east and west of said swale, and "that the surface waters which accumulated upon the lands of plaintiffs as well as the overflow waters from the old bed of the Washita river have for many years had a natural flow or drainage from this swale over and across the lands of plaintiffs and defendants, and that said swale is and has been for many years a well-defined course for said water." They alleged in substance that the re-

sult of the construction and maintenance of said ditch and embankment would be to prevent the waters accumulating on plaintiffs' land and the overflow waters from the Washita river bed from flowing in their natural course and drainage and to impound the same upon the lands of plaintiffs, to their irreparable injury, and would cause plaintiffs' land to be inundated by every rain in that locality, and that it would be impossible to drain plaintiffs' lands and they would become unfit for cultivation or occupation for agricultural purposes.

Defendants filed their answer admitting the ownership and location of the lands as alleged in the amended petition, and further alleged:

". . . . that just north of and adjoining to the plaintiffs' lands, there is located what is commonly referred to as a slough, the same being a part of the old bed of the Washita river, and that in times of excessive flood waters in said Washita river, back waters and flood waters from said Washita river flow into said slough, and at times overflow the south bank thereof, escaping upon the lands of the plaintiffs, and flowing southward and southeastward across plaintiffs' lands, and upon the defendants' lands, but deny that there has been established a well-defined channel or watercourse across the lands described herein, by reason of the overflow waters from said slough."

Defendants further admitted the construction and reconstruction of the ditch and levee substantially as alleged in plaintiffs' petition, and further alleged:

" . . . that these defendants dug said ditch, and constructed said embankment for the purpose of diverting flow of the surface water produced by heavy rains from overflowing from plaintiffs' lands upon and across the lands of these defendants, and their growing crops thereon, as will be more clearly and specifically alleged hereafter, but these defendants deny that they dug said ditch and constructed said embankment or dike wrongfully, unlawfully, or without right, but that on the contrary, they acted within their legal rights in endeavoring to divert the flow of said surface water coming from and across plaintiffs' lands, into a large drainage ditch on the east edge of the premises of the plaintiff, and the defendant."

As a further defense, defendants pleaded that plaintiffs could, with reasonable expense, construct an embankment or levee along the south side of the old river channel or slough and thus prevent the overflow therefrom and prevent the flood waters from flowing across the lands of plaintiffs and defendants.

By cross-petition defendants seek damages from plaintiffs and allege in substance that the water which accumulated and flowed across plaintiffs' land was surface water and that the natural slope of plaintiffs' land from the old channel of the Washita river was to the southeast instead of to the south, and that the waters would naturally flow to the southeast and into a drainage ditch constructed about 1932 which runs from the northeast to the southwest across the southeast corner of plaintiffs' land, except for the negligence and unskillful manner in which plaintiffs had constructed such ditch where it runs across their land in placing the earth excavated from the ditch on the west side of the ditch on plaintiffs' land so as to prevent the water from flowing into said ditch from the north and west and thus forcing it in increased volume into defendants' land lying to the south; that thereby plaintiffs rendered the drainage ditch constructed in 1932 across defendants' land, at a cost to them of $500, useless, and in addition caused damage to defendants' crops in the sum of $500, for which, with other items of alleged damages, defendants prayed judgment.

Defendants also sought injunction against plaintiffs enjoining them from maintaining the embankment on the west side of the ditch constructed in 1932, and prayed that they be permitted to reconstruct the ditch and embankment of which plaintiffs complained.

The issues were tried to the court, resulting in findings of fact and conclusions of law substantially in accord

with the contention of plaintiffs and against that of defendants, and a decree enjoining defendants from reconstructing or maintaining the ditch or levee complained of by plaintiffs, and denying defendants any injunctive relief.

The matter of respective claims for damages was continued by the trial court for trial at some future date, to be determined by the parties or by the court. Defendants appeal, and we are here concerned only with the injunctive features of the case.

The trial court made extended findings of fact and conclusions of law. A part thereof reads:

" . . . that there is a depression, swale or low, running from a point 40 or 50 yards to the south and west of that portion of said slough on the plaintiff's lands in a southeasterly and southerly direction to a point a little west of the center of that portion of the accepted section line dividing the southwest quarter of said section 2, above described, from the northwest quarter of said section 11, above described, and from thence in a southerly direction across the said northwest quarter of said section 11.

"The court further finds that said depression or swale, running across plaintiff's lands and referred to hereinabove, is not a well-defined channel or watercourse within and of itself, however, it is a portion of a watercourse, to wit: The Washita river, when said river is at flood stage and the waters from said river escape through the old slough referred to by the parties onto, upon and across the lands of the plaintiffs and the defendants through said swale."

The conclusions of law include the following:

" . . . that the waters escaping onto and over the lands of the plaintiffs from the old slough referred to by the parties, are the waters of a stream, as distinguished from surface waters.

"The court further concludes that plaintiffs have exercised no more than a rightful and justifiable use of their property in maintaining their levee on the westerly side of ditch No. 4 and ditch No. 1 on their premises, respectively."

—and:

"The court further concludes that to require plaintiffs to build a sufficient dike to keep the waters from the old slough referred to by the parties from flowing down upon plaintiff's said lands, would require the expenditure of unreasonable amounts of money and the exertion of unreasonable labor and trouble on their part, and would, in all likelihood, result in innumerable lawsuits against the plaintiffs from other parties, seeking to prevent and enjoin plaintiffs from throwing river and surface waters upon, said other parties' lands and premises."

Defendants do not specifically attack the findings of the court as to the existence and direction of the depression or swale and the course of the natural flow of the water across the lands involved.

An examination of the record will disclose that such findings of fact are not against the clear weight of the evidence, but are in accord with the preponderance thereof. This appears not only from the evidence of plaintiffs but also from a drainage map prepared and identified by Professor N. E. Wolford of the School of Engineering of the University of Oklahoma, introduced by defendants, showing the elevations at various places on the land involved.

The principal contention of the defendants is that the court erred in its findings and conclusions that the swale or depression through the lands of the parties is a portion of the watercourse of the Washita river, and that the waters complained of "are waters of a stream as distinguished from surface waters."

Defendants assert that all the waters complained of by plaintiffs are surface waters, and that the defendants have the right to defend against same. Defendants cite and rely upon Harvey v. Northern Pacific Railway Co. 63 Wash. 669, 116 P. 464; Cass et ux. v. Dicks et al., 14 Wash. 75, 44 P. 113; Tampa Water Works Co. v. Cline, 37 Fla. 376, 20 So.

780; Neal v. Ohio River Railway Co., 47 W. Va. 316, 34 S. E. 914; Edwards v. Missouri, Kansas & Texas Railway Co., 97 Mo. App. 103, 71 S. W. 366; Shane v. K. C., St. J. & C. B. R. Co., 71 Mo. 237; Jean v. Penn. Co., 9 Ind. App. 56, 36 N. E. 159, and other similar cases.

In Harvey v. Northern Pacific Ry. Co., supra, it is held:

"Waters escaping from the banks of a river at times of flood are 'surface waters,' and not waters of the stream, and a property owner may defend himself against the same, though in so doing he may cause injury to another, . . ."

In Cass v. Dicks, supra, it is held as follows:

"Water which overflows the banks of a stream during a freshet, and which follows no definite channel, becomes surface water."

In Missouri the courts hold that:

"The law is well settled in this state that waters overflowing the banks of a stream must be regarded as surface water." Edwards v. M., K. & T. Ry Co., 97 Mo. App. 103, 71 S. W. 366.

In Jean v. Penn. Co., supra, the Appellate Court of Indiana held:

"Overflow from a river in time of high water is 'surface water.' "

Counsel for defendants concedes that there is conflict in the decisions of the courts of this country in defining surface waters, and contends that the authorities above cited are the most reasonable, and that they are applicable to the evidence in this case.

Defendants cite no decision of this court on that question. Plaintiffs cite and rely upon the early case of Cole v. Missouri, K. & O. R. Co., 20 Okla. 227, 94 P. 540, wherein this court cites and quotes with approval from Crawford v. Rambo, 44 Ohio St. 279, 7 N. E. 429, as stating the correct rule, as follows:

"It is difficult to see upon what principle the flood waters of a river can be likened to surface water. When it is said that a river is out of its banks, no more is. implied than that its volume then exceeds what it ordinarily is. Whether high or low the entire volume at any one time constitutes the water of the river at such time; and the land over which its current flows must be regarded as its channel, so that when swollen by rains and melting snows it extends and flows over the bottoms along its course, that is, its flood channel, as when, by droughts, it is reduced to its minimum, it is then in its low water channel."

In Town of Jefferson et al. v. Hicks, 23 Okla. 684, 102 P. 79, it is held:

"Overflow waters that continue in a general course, although without defined banks, back into the watercourse from which they started, or into another watercourse, do not become 'surface waters,' but remain a part of the watercourse."

Mr. Justice Hayes, the author of the opinion in the above case, pointed out that counsel had called attention to cases in point which supported a rule contrary to the one adopted. He then said:

"In such cases it is held that flood waters, although they return to the same watercourse, or flow into other watercourses, become surface waters, and the owner of the lowlands may protect himself against them by dykes or embankments; but in our opinion these cases are against the weight of authority and are not supported by the better reasoning." Citing Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 82; and Cairo, V. & C. Ry. Co. v. Brevoort, 62 Fed. 129, 25 L. R. A. 527.

Chicago, R. I. & P. Ry. Co. v. Morton, 57 Okla. 711, 157 P. 917, quotes with approval the holding of this court in Town of Jefferson v. Hicks, supra.

In the same case, as reported in 157 P. 917, the 5th paragraph of the syllabus prepared by the editorial staff is as follows:

"A 'watercourse' in the legal sense of the term does not necessarily consist merely of the stream as it flows within the banks, which form the channel in ordinary states of water; but it includes the overflow waters of such stream which extend beyond its banks in times of ordinary floods, and which at such times are accustomed to flow down over

the adjacent low lands in a broader, but still definable, stream, or flow in natural depressions, continuing in a general course, though without definable banks, back into the stream from whence they started, or into another watercourse."

It appears that this court has long since adopted and consistently followed the rule which the trial court followed in the instant case, and has refused to follow the rule adopted in the State of Washington and the other authorities cited by defendants.

We find the same question discussed in Whorton v. Stevens, 84 Iowa, 107, 50 N. W. 562. Therein the court said:

"There is apparently a conflict of authorities on this point which is not real, resulting from the undefined use of the words 'surface water.' When such water flows by a well-defined and natural course upon lower lands, that flow cannot be interfered with by either the upper or lower proprietor."

—and:

"It would be a bold counsel who would advocate, and a bold court which would decide, that water from rains and thawing snows, which is called by counsel 'surface water,' when it finds the swales provided by nature to bear it away, may be arrested in its natural course, and made to flow back upon the land which these swales are intended to drain."

We see no occasion to depart from the well-established rule in this state, and therefore hold that the trial court did not err in holding that the overflow waters were waters of a stream as distinguished from surface water.

What we have said disposes of the second proposition presented by defendants.

It is next contended that plaintiffs cannot complain of injuries to crops by reason of overflow and surface waters because of their contributory negligence and failure to mitigate, or prevent, their damages. Thereunder plaintiffs rely principally upon Taylor v. Schriver et al., 82 Okla. 11, 198 P. 329. That case is not applicable for the reason that it deals entirely with surface waters, and we have just held that the waters complained of in this cause were not surface waters.

It is true that there is a small area of plaintiffs' land, not exceeding four acres, where the water stands for some time after a rain and would not drain away under the natural condition of the land, but there is abundant evidence that by the construction of the ditch and embankment complained of in this case, waters were caused to back over and stand for a long time on about 25 acres of plaintiffs' land, ruining the crops thereon.

Defendants further contend that the injunction prayed for by plaintiffs should not have been granted for the reason that plaintiffs could have, by reasonable expenditure of money, erected an embankment or levee along the south bank of the slough where the waters complained of entered plaintiffs' land, and thus prevented the overflow of both plaintiffs' and defendants' land. The trial court found, and there is evidence to support it, that the cost of such embankment was prohibitive. Furthermore, if such a levee had been constructed, the result would have been to force the water over the lands of others, to their detriment and plaintiffs' liability.

Other propositions are presented, but the principal question in this case is determinative of all others.

Affirmed.

CORN, C. J., GIBSON, V. C. J., and OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.